# Deposition of Michael Wilson

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

*U.S.A. v. St. Germain and Overley*

**United States District Court**
**District of Massachusetts**
**Case No. 03-CV-1041-PSF**

*Taken By Defendants*
*June 9, 2005*

Reported by:
Shelly Findley-Cozzo
Professional Shorthand Reporter

Transcript provided by:

*Javernick & Stenstrom, LLC*
*3131 South Vaughn Way, Suite 224, Aurora, Colorado 80014*
*720-449-0329 • FAX 720-449-0334*

EXHIBIT A-5

12 (Pages 39 to 42)

**Page 39**

1  everybody who I thought could help shed light on it -- on
2  all of this information; information which I believe
3  indicative of violations of probation.
4     Q   Okay. When you first heard this coming from
5  Mr. Kob -- I'm talking about the allegation that there
6  was property being held in the name of Randy Overley --
7  did you believe it coming from Mr. Kob?
8     A   I thought that it was -- he seemed
9  sufficiently informed that it bore my looking into it.
10 Had he told me something outrageous, I wouldn't have
11 looked into it. But he knew names; and he knew
12 circumstances; and he was -- Mr. St. Germain had told me
13 that Kob had been a roommate, so I knew that Kob knew
14 St. Germain and had apparently lived with
15 Mr. St. Germain. So I knew he was in a position to know
16 something.
17        And when he told me about the typewritten
18 list, the little list of prepackaged answers to my
19 anticipated questions, well, I knew that was directly --
20 that had the ring of truth because I had told
21 Mr. St. Germain I intended to verify what he had been
22 telling me. That made perfect sense. And I had planted
23 that seed, and now I saw something come to fruition of
24 that seed.
25    Q   Did you ever provide that document you just

**Page 40**

1  described, question and answer to Mr. Alberto?
2     A   I don't remember if I had or not. I was
3  looking quickly as I was preparing this morning looking
4  for it, and I couldn't find it. I've seen it. I had it.
5  Whether I still have it, I can't tell you.
6     Q   Would you -- or do you believe the judge would
7  have any objection to disclosing that document to the
8  parties in this case?
9     A   No, my -- had I had it or had I been able to
10 lay my hands on it, that would have been the sort of
11 thing that would have been authorized. If I can find it,
12 you can have it. These are the talking points that
13 St. Germain prepared for Mr. Kob to respond to my
14 anticipated questions.
15        MR. ALBERTO: I'm not sure, but it may have
16 been an exhibit in one of those depositions back in 2001,
17 but I'm not sure of that.
18        MR. GEE: I don't think so.
19        MR. ALBERTO: Okay.
20    Q   (By Mr. Gee) You testified earlier that you
21 are an employee of the court, right?
22    A   Correct.
23    Q   And that, in effect, you are the federal court
24 because you're part of it, right?
25    A   I'm not the federal court. I'm an employee of

**Page 41**

1  the federal court.
2     Q   Okay. During the course of your probation
3  supervision of any probationer, do you have contacts
4  independently with the United States Attorney's Office or
5  its representatives?
6     A   Yes, if I understand your question correctly.
7     Q   I'll ask some more specifics here. If you
8  believe that there is a violation of probation, will you
9  contact an agent of the U.S. Attorney's Office?
10    A   Sometimes. I mean, the U.S. Attorney's Office
11 doesn't determine whether we file in this case, whether I
12 filed on a petition to revoke probation. We will
13 sometimes consult with the U.S. Attorney's Office on
14 legal points or strategy but not always.
15    Q   Prior to the time that you filed Deposition
16 Exhibit Number 18 with the Court on May 26 of 2000, did
17 you confer with any representative of the U.S. Attorney's
18 Office here in the district of Colorado?
19    A   I don't recall at this moment.
20    Q   Would it be typical for you to do so before
21 you file a petition of probation revocation of this
22 nature? And by "this nature," I guess what I'm referring
23 to are the allegations that you're making in the
24 revocation petition.
25    A   I would say typically I would have because I'm

**Page 42**

1  asserting violations of law as opposed to more mundane
2  technical violations of probation.
3     Q   But you don't have a memory of whether or not
4  you did that or not?
5     A   I can't tell you whether or not I did it in
6  this case or not.
7     Q   Did you read Deposition Exhibit Number 18 in
8  preparation for today's deposition?
9     A   No.
10    Q   But you previously have read it, right?
11    A   I wrote it.
12    Q   Okay. During the time that you were writing
13 it or during the times that you reviewed it, did you see
14 anything in Deposition Exhibit Number 18 that was an
15 error?
16    A   No.
17    Q   Did you -- were there occasions when you would
18 read it and think that you should have added something
19 more in order to make it more complete?
20    A   No.
21    Q   In preparing Deposition Exhibit Number 18,
22 were you relying on Deposition Exhibit Number 16, the
23 chrono notes?
24    A   I relied on the chronological notes in part.
25    Q   Okay. Did you rely on some of the