PROB 12
(4/96-D/CO)

UNITED STATES DISTRICT COURT

for

DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 26 2000

JAMES R. MANSPEAKER
CLERK

U. S. A. vs. DAVID ST. GERMAIN          Docket No. 99-CR-408-N

### Petition on Probation and Supervised Release

COMES NOW, MICHAEL WILSON, PROBATION OFFICER OF THE COURT presenting an official report upon the conduct and attitude of David St. Germain who was placed on supervision by the Honorable Mark L. Wolf sitting on the court at Boston, Massachusetts, on the 26th day of October, 1995, who fixed the period of supervision at five (5) years, and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:

1. The defendant shall not apply for any new loans, individually or through others, without prior authorization from the U.S. Probation Department.

2. The defendant shall pay $600,000 in restitution jointly and severally with co-defendant Loiselle.

The defendant shall pay $450 in Special Assessments.

**On July 23, 1996, the following special conditions were added:**

The defendant shall provide the probation department access to any requested financial information.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

The defendant shall not be involved in any real estate transactions without the prior approval of the probation officer.

**On July 31, 1997, the conditions were again modified as follows:**

The subject will pay a minimum of 25% of his gross income toward restitution.

**On November 16, 1999, jurisdiction was transferred from the District of Massachusetts to the District of Colorado, and subsequently assigned to Your Honor.**

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:
(If short insert here: if lengthy write on separate sheet and attach)

EXHIBIT A-7



See attachment hereto and herein incorporated by reference.

    PRAYING THAT THE COURT WILL ORDER the issuance of a summons for violations of probation and set a hearing date for a revocation hearing.

    ORDER OF THE COURT

Considered and ordered this 14 day of May, 2000, and ordered filed and made a part of the record in the above case.

_____
Edward W. Nottingham
U.S. District Judge

Respectfully,

_____
Michael Wilson
Sr. Probation Officer

Place   Denver, CO

Date   May 10, 2000

# ATTACHMENT

Attached hereto as Exhibit A and incorporated by reference are true copies of the Judgment Order and the conditions of probation signed by the defendant on September 10, 1996. Also attached are orders modifying the conditions of probation signed by the defendant on July 8, 1997, and September 15, 1997. His signature on these occasions acknowledged that the conditions had been read and explained to him, that he fully understood said conditions, and that he was provided with a copy of them. The term of probation commenced September 5, 1996.

The defendant has committed the following violations of probation:

1) **Violation of Law**: Obstruction of the Administration of Justice, 18 U.S.C. § 1503.

Beginning November 3, 1997 through November 1999, the defendant did knowingly and corruptly endeavor to influence, obstruct and impede the administration of justice, in violation of 18 U.S.C. § 1503. This is a Class C felony and a violation of probation Condition 1.

This charge is based on the following facts:

On July 11, 1997, the defendant told U.S. Probation Officer Kathleen Keenan he would be employed by Randy Overley starting July 14, 1997. The defendant subsequently submitted a written monthly supervision report form for July dated August 1, 1997, claiming employment with Overley d/b/a Computer Packaging and Design at 2731 West Wolfensberger Road in Sedalia, Colorado (and later referred to by defendant as Creative Packaging and Design at the same address). The defendant continued to report this employment in writing each month until December 7, 1999. The defendant submitted copies of paychecks and paystubs/salary statements as income documentation.

The defendant's October, 1997 report form included a paystub/salary statement reflecting a net income of $1,662.30, with the notation that it was written on check No. 2613, dated October 3, 1997. However, the defendant again submitted check No. 2613 in the amount of $1,662.30 to document his November 1997 income from Creative Packaging and Design. The check was altered to appear as check No. 2813. This document (a photocopy submitted by the defendant) apparently was transmitted via fax from Overley's business to an unknown location on November 4, 1997, this in spite of the fact that the check is dated December 5, 1997. Further, the defendant's November 1997 report form includes a paystub/salary statement purporting to reflect a November 3, 1997 payment of $1,662.30 on "check #2813" to document that month's income. It was attached to the just-noted bogus paycheck photocopy reflecting the altered number 2813. In addition, the defendant's December 1997 report form again utilizes check No. 2613 in the amount of $1,662.30, again with the altered "2813" number in the upper right corner as proof of December's income.

1

On June 16, 1997, Overley was interviewed by USPO Keenan at his office in Englewood, Colorado. Overley described defendant's job as community relations and client contacts on behalf of Computer Packaging and Design. Overley said he would pay the defendant via check and withhold the necessary taxes. On November 4, 1997, the defendant described to USPO Keenan the various locations he visited in connection to his job with Overley. On January 20, 1998 and March 30, 1998, Overley provided verbal confirmation to USPO Keenan of the defendant's employment. On June 8, 1999, the defendant was interviewed by USPO Michael Wilson. The defendant reported continued employment with Overley. Later that morning, Overley was personally interviewed at his home office by USPO Wilson. Overley again confirmed the defendant's employment. Overley was told about the defendant's $600,000 restitution order.

As verified by the Internal Revenue Service, W-2 forms were submitted for tax years 1997 and 1998 claiming employment income of $9,900 and $20,250, respectively, from "Randy K. Overley dba CP&D" during 1997 and "CPD" during 1998.

The defendant provided copies of these tax returns to the probation office as requested on March 16, 1998, and July 19, 1999.

On August 17, 1999, defendant's former roommate, Jeff Kob, told USPO Wilson that the defendant "never, ever" worked for Randy Overley. The defendant told Kob that the Overley arrangement was a no show job. The defendant gave Kob a typed list of prepared answers dated July 27, 1999, in anticipation of an interview of Kob by USPO Wilson. A copy of the prepared answers was provided to Probation. It contained material false statements. On January 28, 2000, "Cowboy" Bob Berliner told USPO Wilson that the defendant had an arrangement with Randy Overley, which included Overley's issuance of net salary paychecks to the defendant with the defendant then reimbursing Overley in the gross amount of his salary.

On February 14, 2000, attorney Lee Foreman, speaking on behalf of his client Randy Overley, told USPO Wilson the following: In 1997, defendant St. Germain had expressed to Overley an "immediate need for W-2s" and was hired by Overley. After approximately four months, a deal was struck between Overley and the defendant wherein the defendant would remain on payroll, but would not do any work. Paychecks issued by Overley would be cashed by the defendant with payment in turn being returned to Overley in the gross amounts of salary. Overley was aware that maintaining the defendant on his low paying payroll would by necessity result in a low restitution payment. Overley was aware that the defendant owed $600,000 in restitution.

Thus, from October 1997 until December 1999, the defendant submitted 27 report forms which contained bogus job claims and spurious income documentation.

The defendant submitted a credit report to Probation dated July 27, 1999, with a note stating, "I explained to Randy Overley that I needed to make a job change because I needed to earn more money. He has offered to increase my annual salary to $26,500. I will work extra hours and

2

assume some additional responsibilities. I would like to stay on with this company. The increase will be effective September 1."

On October 7, 1999, the defendant told USPO Wilson, during an interview at his house, that his job duties at Creative Packaging and Design were unchanged and that he typically worked from 9:00 A.M. to 5:00 P.M. He denied having any side jobs or other sources of income.

On January 12, 2000, attorney Walter Gerash told USPO Wilson that the defendant had worked for Overley earning "full-time wages," while taking time out from his duties to stop by Scott Lambert's office to help him.

2)   **Violation of Law**: False Statement, 18 U.S.C. § 1001.

Beginning on or about September 1997 until January 13, 2000, the defendant knowingly and willfully falsified and concealed information by way of written documents and verbal representations to the U.S. Probation Office, the Internal Revenue Service and the Federal Aviation Administration, in violation of 18 U.S.C. § 1001, a Class D felony and a violation of probation condition 1.

This charge is based on the following facts:

(A)   The Grizzly Rose Saloon commenced business under the management of "Cowboy" Bob Berliner on or about October 11, 1999. Also acting in a managerial capacity was the defendant. According to architect John Garner of Denver, he met with the defendant and Bob Berliner at the Grizzly Rose on November 3, 1999. Included in their discussion was the installation of an overhead/garage door now in place at the Grizzly Rose. The defendant and Garner also discussed these plans over the telephone. According to Abe Praznik, Fire Marshal with the North Washington Fire Protection District, the defendant "appeared to be the construction supervisor for the Grizzly Rose." Praznik was assigned to ensure the establishment's compliance with fire and safety codes. He met with the defendant and two architects over lunch on November 9, 1999 to discuss the renovation plans.

Further evidence of the defendant's managerial role at the Grizzly Rose was an October 21, 1999 invoice from Awesome Audio Productions for $2,500. The bill was submitted, but not paid. According to Alan Eisenbach and Rob Wright of Awesome Audio, only after their meeting with the defendant did the defendant authorize a reduced payment. Prompting this meeting was the return of the original invoice to Awesome Audio (unpaid) which was marked, "Don't pay yet. Dave needs to see Alan first."

On or about October 5, 1999, the defendant endorsed a $50,000 check with the notation "pay to the order of Durant, Inc.," the owner of record of the Grizzly Rose business.

3

According to Heritage Electric of Denver, as late as December 28, 1999, the defendant made a business phone call to Heritage requesting electrical work at the Grizzly Rose.

In a written statement to Probation dated January 13, 2000, the defendant falsely described his Grizzly Rose Saloon employment: "I started December 1, 1999 and was terminated December 24, 1999." The defendant's October and November, 1999 monthly report forms omit any mention of this employment.

(B) The defendant's first monthly supervision report form submitted to the probation office pertained to September 1996 and was dated October 1, 1996. Part C of the face page directs the defendant to list all vehicles "owned or driven." The defendant listed a 1988 Jeep Cherokee and no other vehicles. The defendant subsequently submitted 41 monthly supervision report forms, with at least 38 of those forms failing to list all vehicles he owned or has driven.

On March 10, 1999, the defendant was personally interviewed at his home. When USPO Wilson observed a Corvette in the defendant's garage, the defendant described it as belonging to his roommate.

As covered in a section to follow, the defendant attempted to lease a local country-western club known as the "Rodeo" while simultaneously negotiating the Grizzly Rose deal. On or about June 30, 1999, the defendant submitted a balance sheet supporting a Rodeo deal "letter of intent" sent to Amerishop Real Estate Services, a real estate management company with offices in Phoenix and Dallas. The balance sheet includes as an asset the defendant's 1986 Chevrolet Corvette "custom show car," with an assigned value of $22,000.

On January 12, 2000, the defendant was interviewed in the probation office with attorney Walter Gerash present. At Gerash's prompting, for the first time, the defendant acknowledged owning a 1986 Corvette, which he valued at between $7,000 - $8,000. He said that it was registered in the name of CP&D, but that it was actually his property. The defendant was subsequently interviewed at his home on February 11, 2000, and he stated he purchased the vehicle in either late 1992 or early 1993 for $15,000 cash. He acknowledged that the registration listing its owner as "CP&D" was fictitious in that the registered owner "doesn't exist, never did." As verified by Colorado Department of Vehicles, the car was originally purchased on September 13, 1992. A Massachusetts title was issued in the name of Pauline St. Germain (defendant's mother). On July 30, 1997, Mrs. St. Germain sold the vehicle for $6750 and a Colorado title in the name of CP&D was issued. Not until his report form for January 2000, did the defendant properly list his 1986 Chevrolet Corvette. As verified, the defendant has insured the Corvette with American Family Insurance since August 1, 1997.

(C) The defendant has been instructed to report his complete finances on two occasions. He submitted certified financial statements to the probation office on April 22, 1997 and June 3, 1998. On each occasion he omitted any mention of the 1986 Corvette. On January 12, 2000, the

4

defendant said that he had failed to report this vehicle and falsely registered it out of fear it would be seized.

(D) As a further means to ascertain and verify his finances and employment, the defendant was directed to submit tax documents. As verified by the Internal Revenue Service, and as reflected in the probation office case file, the defendant submitted IRS form 1040 tax returns which falsely report income and employment as an "assistant" and "customer rep" for tax years 1997 and 1998. The defendant's W-2 forms falsely claim this income and employment with Randy Overley.

(E) On or about March 17, 1999, the defendant completed Federal Aviation Administration Form 8500-8 to apply for a student pilot's license from the Federal Aviation Administration. This application, which includes a false statement warning, asked the defendant if he had ever been convicted of a felony, to which the defendant answered no. This form bears the defendant's signature and is dated March 17, 1999. It was submitted to the Federal Aviation Administration, from which the probation office has obtained a certified copy.

3) **Failure to Report as Directed**:

Beginning with the defendant's September 1996 monthly report and ending with the defendant's January 2000 monthly report, he has submitted 41 false written monthly supervision reports regarding one or more of the following: home address, employment, income, expenses and motor vehicles. The defendant submitted tax returns to the probation office for 1997 and 1998 which falsely report income from a job at which he did not work, all in violation of Condition 6 which directs the defendant to "follow the probation officer's instructions and report as directed."

This charge is based on the following facts:

(A) From on or about September 1997 until at least January 3, 2000, the defendant was working as a building/property manager at Parker Place, an office building at 2600 South Parker Road, Aurora, CO, d/b/a First Rendy and/or Rendy Group, First Cornerstone Management, Inc., and Fresh Start Gas, Inc. All written monthly supervision report forms submitted by the defendant omit any mention of these employments. According to a written statement dated February 8, 2000, submitted by Marlene Husson, a manager at Parker Place tenant Aurora Mental Health, "I first met him (defendant) in September of 1997. He stated he was running the management for Parker Place for a new owner." On January 11, 2000, Aurora Mental Health's Chief Financial Officer, Cecil Morehouse, said the defendant was the "manager." He recalled that Rendy Group, LLC issued a letter in July 1997 advising of its new ownership of the building. A copy of a "Resume and Professional Background" statement concerning First Cornerstone Management, Inc., dated July 1, 1999, was obtained from a real estate broker and further establishes the Parker Place purchase date. It asserts "First Cornerstone Management, Inc. was formed along with the purchase of Parker Place Office Complex approximately two years ago." It continues "when Parker Place was purchased in July of 1997..." According to a letter dated February 2, 2000, submitted by Parker Place tenant Kenneth Lazear, president of

5

Communications Marketing Systems, "First Cornerstone Management has been the property managers for two years. In my relationship with Mr. St. Germain, I have been under the impression that he was the property manager for First Cornerstone." On January 21, 2000, Ms. Gloria Carver, office manager of Parker Place tenant Arapahoe House, described the defendant as an "authority figure." On February 1, 2000, Mr. David Murphy, Director of Operations of Arapahoe House told Probation that the defendant was his "primary contact person" during lease negotiations and with matters regarding the tenant/management relationship. Murphy's office has provided correspondence documenting the defendant's involvement in the management of the Parker Place office building as early as December 18, 1997.

On December 6, 1999, U.S. Probation Officer John Roncalio entered the First Cornerstone Management offices at 2600 South Parker Road in Aurora. He met and spoke briefly with the defendant in this office. On January 3, 2000, U.S. Probation Officer Kurt Pierpont entered the offices of First Cornerstone and spoke with the defendant. USPO Pierpont asked the defendant if he (the defendant) worked there and the defendant said that he did, and referred USPO Pierpont to another man to show available office space. On January 12, 2000, during an interview of the defendant at the probation office with counsel Walter Gerash present, the defendant stated that he helped Scott Lambert negotiate leases in that office building. Defendant further noted "I've been assisting Scott" in expectation of being paid later. Gerash described the defendant as earning "equitable assets" during the preceding three years, based upon the defendant's involvement at the 2600 South Parker Road office building. Gerash stated that the defendant frequently had blocks of time from one-half hour to two or three hours during which he would stop by this real estate office and assist Scott Lambert. The defendant described himself as a "gofer." On February 1, 2000, Gerash stated that the defendant "did rentals, leasing and repairs" with the expectation that he would receive compensation when the office building was sold. On February 2, 2000, the defendant was again interviewed at the probation office with counsel Walter Gerash present. The defendant asked how he should report the equity he had earned in the office building in his monthly report forms submitted to Probation.

On January 3, 2000, the defendant signed a proposal for electrical work on behalf of "Texaco/Parker Place" with Heritage Electric of 1881 South Dayton Street in Denver. According to Todd Allen of Heritage Electric, he and the defendant met at the Texaco Food Mart at 7710 Brighton Road in Commerce City, Colorado. After negotiating its terms during their face-to-face meeting, the defendant signed and dated the work order proposal on January 3, 2000. However, the defendant signed the proposal "Scott R. Lambert" rather than his own name. Probation has a copy of that contract.

According to Gwen and Bill Gallagher of Texaco wholesaler Offen Petroleum, Inc., of Denver, Colorado, the defendant impressed as being a "silent partner" of Scott Lambert in the just-noted gas station, car wash, restaurant and laundromat business on Brighton Road. According to previous owner Roger Guzman, he sold this business to Scott Lambert, d/b/a Northeast Holding Company, LLC, on October 19, 1999. However, during negotiations, Guzman said he believed Lambert to be acting as the realtor and the defendant as the buyer. They appeared to be partners.

The defendant reportedly told Guzman and broker Kelly Williams he was the buyer and owner of the Grizzly Rose. This gas station /convenience store is known as Fresh Start Gas, Inc. On January 11, 2000, USPO Wilson visited this location and the counter clerk identified the landlords as "Scott and Dave."

On April 4, 2000, Ms. Kelly Williams was interviewed regarding the Fresh Start Gas transaction. She acted as the real estate broker for Roger Guzman. She recalled that Scott Lambert told her he (Lambert) was representing the defendant on this real estate deal. Shortly thereafter, in their haste to consummate this deal, she said the buyers mistakenly completed a "Residential Contract to Buy and Sell Real Estate," with Scott Lambert signing off July 30, 1999 as "Scott R. Lambert, Agent/Representative for Buyers." However, this was a commercial real estate deal and a new form was completed by Lambert on August 3, 1999. Ms. Williams said she and Lambert split the broker's commission on this transaction, each receiving $65,000. She gave USPO Wilson fax cover sheets, dated August 2, 1999, and August 18, 1999, sent to her from the defendant concerning this transaction. Further, she received a faxed letter from the defendant dated August 18, 1999, regarding this real estate deal which states, "Scott and I just wanted to let you know that things are proceeding according to schedule as to our due diligence and obtaining our financing. We currently have three lenders that are willing to provide the necessary financing. It is just a matter of getting the final terms in writing before we commit to one of them." The selling price on October 19, 1999 was $2,261,731.20.

Every monthly report form submitted by the defendant beginning September 1997 through January 2000, failed to claim any employment or activity with First Cornerstone Management, Fresh Start Gas, Inc., or the office building located at 2600 South Parker Road in Aurora. Without acknowledging anything about Fresh Start Gas on January 12, 2000, the defendant acknowledged withholding the fact of his work with Scott Lambert.

The form 1040 tax returns for 1997 and 1998, which report earnings now known to be bogus, each warn of the "penalties of perjury" and a requirement that "they are true, correct and complete."

The defendant received written instructions regarding the completion of the monthly supervision report form, including, "The form must be completed thoroughly and accurately." In addition, every report form submitted by the defendant includes a certification above the signature line that "all information furnished is complete and accurate." Every report form also has a warning regarding False Statement, 18 U.S.C. § 1001.

(B)     False Statements - Monthly Supervision Report Forms:

   09/96 - 05/97 (9 months):

   Fails to list ownership of 1986 Corvette. It was not until January 12, 2000, that the defendant acknowledged ownership of this vehicle.

7

07/97 - 09/97 (3 months):

    Fails to list ownership of 1986 Corvette.

    Omits mention of job at 2600 South Parker Road in Aurora, Colorado with First Rendy/First Cornerstone Management. This is an office building where Scott Lambert worked with the defendant as property managers and/or owner(s). On July 8, 1997, USPO Keenan instructed the defendant not to work with Lambert.

10/97- Fails to list ownership of 1986 Corvette.

    Submits false pay statement reflecting October 3, 1997, net income of $1662.30 said to have been written on check #2613. Later submits this check (dated December 5, 1997) twice, to document November income and December, 1997 income. (The pay statement pertaining to check #2613 was thus submitted to document October income, on a check not dated or issued until two months later).

    Omits mention of work at 2600 South Parker Road in Aurora, Colorado with First Rendy/First Cornerstone Management.

11/97- Fails to list ownership of 1986 Corvette.

    Fails to list use of 1998 Dodge Pickup. As verified by the Colorado Department of Motor Vehicles, the truck was leased by Randy Overley on October 17, 1997. Months later, when the defendant acknowledges use of this vehicle, he explained that it was provided by employer Randy Overley. On February 14, 2000, attorney Lee Foreman, speaking on behalf of his client Randy Overley, told Probation that the defendant was thought to have had the exclusive use of the truck, and to have had a reimbursement arrangement with Overley to cover Overley's leasing costs. According to American Family Insurance Company, the defendant was the insured party for this vehicle. Coverage began on or about October 31, 1997.

    Omits mention of work at 2600 South Parker Road in Aurora, Colorado with First Rendy/First Cornerstone Management.

    Submits check #2613 (dated December 5, 1997) to document November employment income, with Randy Overley, d/b/a Creative Packaging and Design. Alters check number to appear as #2813.

12/97- Fails to list ownership of 1986 Corvette.

    Fails to list use of 1998 Dodge truck.

  Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

  Submits bogus check #2613 while falsely claiming employment and income with Randy Overley dba Creative Packaging & Design.

01/98- Fails to list ownership of 1986 Corvette.

  Fails to list use of 1998 Dodge truck.

  Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

  Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

  Falsely claims an auto insurance payment of $112.25. Documentation obtained from American Family Insurance Company reflects a $157.68 payment dated January 15, 1998. At no time did the defendant ever accurately report his insurance expenses.

02/98- 05/98 (4 months):

  Fails to list ownership of 1986 Corvette.

  Fails to list use of 1998 Dodge truck.

  Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

  Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

  Falsely claims an auto insurance payment of $112.25 each of these months. Defendant actually paid $110.03 on March 5, 1998, and $134.83 on May 1, 1998, the latter payment for the undisclosed Dodge truck.

06/98- Fails to list ownership of 1986 Corvette.

  Fails to list use of 1998 Dodge truck.

  Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

  Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Falsely claims an auto insurance payment of $112.25. Defendant actually paid $151.43 on June 14, 1998.

07/98- Fails to list ownership of 1986 Corvette.

        Fails to list use of 1998 Dodge truck.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Falsely claims to reside with Bob Berliner, in spite of the fact that defendant was accepted as a tenant at The Breakers, 9071 East Mississippi Avenue in Denver, as of June 16, 1998. (The defendant signed the rental agreement July 10, 1998, and two checks totaling $930.50 were received by The Breakers on July 14, 1998).

08/98- Fails to list ownership of 1986 Corvette.

        Fails to list use of 1998 Dodge truck.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Falsely reports moving into Unit 15-B at The Breakers on September 1, 1998. Rent checks of $1300.00 were received on or about August 4, 1998, and September 1, 1998. The defendant is the sole listed occupant on the rental agreement and application form. The defendant wrote as an explanation on his report form "closer to my work/travel coverage area."

09/98- Fails to list ownership of 1986 Corvette.

        Fails to list use of 1998 Dodge truck.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

10/98- Fails to list ownership of 1986 Corvette.

Fails to list use of 1998 Dodge truck.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

Falsely claims an auto insurance payment of $112.25. Documentation obtained from American Family Insurance Company reflects a $132.90 payment dated October 1, 1998, and a $185.43 payment dated October 17, 1998, for the undisclosed Corvette and Dodge vehicles, respectively.

11/98- Fails to list ownership of 1986 Corvette.

Fails to list use of 1998 Dodge truck. (The defendant had an accident on November 17, 1998, driving this vehicle causing a $600 payout by the defendant's insurance company).

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

Falsely claims an auto insurance payment of $112.25. Documentation obtained from American Family Insurance Company reflects a $100.00 payment dated November 17, 1998 for the undisclosed Dodge truck.

12/98- Fails to list ownership of 1986 Corvette.

Fails to list use of 1998 Dodge truck.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

01/99- 02/99 (2 months):

Fails to list ownership of 1986 Corvette.

Fails to list use of 1998 Dodge truck.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

03/99- Fails to list ownership of 1986 Corvette.

The defendant acknowledges use of the Dodge truck for the first time 17 months after it was leased, and the defendant's auto insurance documents him as the insured party. At this point, the defendant stops making any claims to pay for motor vehicle insurance, instead explaining the Dodge truck as being provided by the claimed employer, Creative Packing & Design/Randy Overley. However, as verified by American Family Insurance Company, the defendant maintained coverage for both the Corvette and the Dodge.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

04/99- Fails to list ownership of 1986 Corvette.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

05/99- Fails to list ownership of 1986 Corvette.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

Falsely answers "No" to the question "Did you travel outside the district without permission?" According to flight instructors Michael Plumer and Matt Heinlein, they and the defendant flew to Addison, Texas on May 15, 1999, and returned the next day. This travel was without the knowledge or permission of the probation office.

06/99- Fails to list ownership of 1986 Corvette.

Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Falsely answers "No" to the question "Did you travel outside the district without permission?" According to flight instructor Michael Plumer, he and the defendant flew to and from Cheyenne, Wyoming on June 21, 1999. This travel was without the knowledge or permission of the probation office.

07/99- Fails to list ownership of 1986 Corvette.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Falsely answers "No" to the question "Did you travel outside the district without permission?" According to flight instructor Michael Plumer, he and the defendant flew to and from Cheyenne, Wyoming on July 1, 1999. This travel was without the knowledge or permission of the probation office.

08/99- 09/99 (2 months):

        Fails to list ownership of 1986 Corvette.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

10/99- Fails to list ownership of 1986 Corvette.

        Omits mention of work at 2600 South Parker Road, Aurora, Colorado. On October 19, 1999, the defendant became an owner and/or manager of Fresh Start Gas, Inc., dba the Texaco Food Mart at 7716 North Brighton Road, Commerce City, Colorado. The defendant failed to disclose this employment.

        Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

        Fails to disclose that he began working at the Grizzly Rose Saloon at 5454 North Valley Highway, Denver, Colorado on or about October 11, 1999, as an owner and/or manager.

11/99- Fails to list ownership of 1986 Corvette.

       Omits mention of work at 2600 South Parker Road, Aurora, Colorado. Fresh Start Gas, Inc., offices are also at this location.

       Falsely claims employment and income with Randy Overley dba Creative Packaging & Design.

       Fails to disclose work at the Grizzly Rose until submitting this form dated December 7, 1999. Falsely writes, "Effective 12/1/99, working as a paid consultant for Grizzly Rose Restaurant and Night Club."

12/99- Fails to list ownership of 1986 Corvette.

       Omits mention of work at 2600 South Parker Road, Aurora, Colorado. Fresh Start Gas, Inc., offices are also at this location.

       Submits a false salary statement dated December 3, 1999, for $2039.08, to document his final payment from claimed employer, Randy Overley, dba Creative Packaging & Design.

       Fails to report any auto insurance expenses. As verified, the defendant paid $256.82 on December 8, 1999.

01/00- During an office interview on January 12, 2000, the defendant, for the first time, acknowledges owning the 1986 Corvette.

       Omits mention of work at 2600 South Parker Road, Aurora, Colorado. Fresh Start Gas, Inc., offices are also at this location.

       Pays no restitution, falsely claiming, "Cannot pay this month while temporarily unemployed."

       Fails to report any auto insurance expenses. As verified, the defendant paid $259.36 on January 5, 2000.

02/00- Fails to report any auto insurance expenses. As verified, the defendant paid $123.96 on February 11, 2000.

See additional facts reflected in Charge 2, sections A, B, C and D (False Statement) which are incorporated herein by reference.

4) **Failure to Obtain Approval Prior to Involvement in any Real Estate Transaction**:

Between June 30, 1999 and September 3, 1999, the defendant attempted to secure a lease for a commercial property previously known as the Rodeo Night Club at 10001 Grant Street, Thornton, Colorado. This involvement included telephone calls, fax transmissions, written correspondence, and face-to-face contacts with representatives of Amerishop Real Estate Services of Phoenix, Arizona and Dallas, Texas. The defendant was involved in obtaining a construction loan from First Bank in Castle Rock, Colorado between approximately April 1, 1999 and October 1, 1999. The loan was to finance a log home in Franktown, Colorado. Beginning on or about August 2, 1999, and ending October 19, 1999, the defendant was involved in the negotiations and buying of the property and building which includes the Fresh Start Texaco Food Mart at 7710 Brighton Road, Commerce City, Colorado. On or before August 11, 1999, until the closing date of October 11, 1999, the defendant was involved in negotiations to lease the real estate/property located at 5454 North Valley Highway, Denver, Colorado, otherwise known as The Grizzly Rose Saloon, all of which is in violation of the special condition imposed on July 23, 1996.

This charge is based on the following facts:

(A) On June 30, 1999, the defendant signed and dated a "letter of intent" to lease space at 10001 Grant Street, Thornton, Colorado, in an effort to lease space previously occupied by the Rodeo Country and Western Nightclub from Amerishop Real Estate Services of Phoenix and Dallas. On July 12, 1999, the defendant submitted a credit report and "potential tenant information form" to Amerishop in Phoenix. The information form, dated July 8, 1999, reflects the defendant's signature. On August 3, 1999, the defendant faxed a letter of the same date to Mary Boone at Amerishop in Dallas. This letter states, "We stand firm behind our broker's letter dated July 29, 1999, and we are ready, willing and able to execute a lease agreement under the terms and conditions described in that letter, up until August 15, 1999." The letter is signed by the defendant. These documents were all provided to USPO Wilson by the Amerishop offices in Dallas, Texas.

(B) On August 11, 1999, the defendant issued an "offer letter" to Ken Muelller, owner of the building and property of the Grizzly Rose Saloon at 5450 North Valley Highway, Denver, Colorado. The letter states, "As you know, we are very interested in negotiating a deal with you to purchase the Grizzly Rose." The letter continues, "We are prepared to offer $1,500,000 to purchase the business only, known as the Grizzly Rose under the following terms and conditions." The letter goes on, "Furthermore, we will lease the entire building that presently houses the Grizzly Rose under the following terms... Although we feel that the space in the Thornton Town Center can be a success for us, we also feel that the Grizzly Rose can be an even larger success, for both of us, as well as yourself." This letter was obtained by the probation office from Steven W. Smith, real estate leasing associate from First Industrial Realty Trust of Englewood, Colorado.

Representing the defendant and his partner "Cowboy" Bob Berliner on the Grizzly Rose deal was attorney Jesse Lipschuetz. Between September 27, 1999 and October 7, 1999, Lipschuetz's correspondence with attorney Gene Tardy, representing Mr. Mueller, was copied to the defendant on four occasions regarding the Grizzly Rose lease and real estate transaction. Further, according to real estate broker Steven Smith, attorney Gene Tardy and property owner Ken Mueller, the defendant was involved and present at meetings regarding the leasing of the Grizzly Rose.

On March 9, 2000, Scott Lambert provided sworn testimony before Judge C. Vincent Phelps, Adams County District Court, Docket 2000CV385, in regard to the Grizzly Rose real estate transaction. During direct examination by Roy W. Penny, attorney for Bob Berlner: Question by Mr. Penny, "Mr. St. Germain comes to you, he tells you he needs a lease. He needs $150,000, right?" Lambert "Right."

(C)   According to Sean Nixon, vice president of First Bank of Founders Parkway in Castle Rock, Colorado, the defendant was involved with Randy Overley in obtaining a construction loan on a log home to be built at Castlewood Canyon Road in Franktown. The defendant was present at their initial meeting in April 1999 and at the closing on October 1, 1999. Although the loan is in Overley's name, the defendant was described by Nixon as being more interested in and as having more questions about this loan than Overley. According to Lee Foreman, attorney for Overley, the defendant invested between $25,000 and $30,000 into this home. Craig Mundt, of International Network, Inc. of Aurora, Colorado, sold the land upon which the log home now sits. On February 17, 2000, Mundt told USPO Wilson that the buyer of record is Randy Overley. However, Mundt also said that the defendant was the "driving force" behind the land sale. Mundt knew that the defendant was prohibited from involvement in real estate and had a poor credit history. Mundt's understanding was that those two facts prevented the defendant's name from appearing on the paperwork. Further evidence of the extent of defendant's involvement in this real estate transaction was obtained from the designer/supplier of the log home materials used to construct the home. According to salesman Max Coleman, the defendant contacted Rocky Mountain Log Homes of Hamilton, Montana on January 14, 1999, "indicating his interest in purchasing log home components." On March 18, 1999, the defendant signed and dated a Rocky Mountain Log Home Plan Purchase Agreement which required a payment of $4,555.50. Coleman noted that, "The check arrived with the signed agreement, however, it was remitted by First Cornerstone Management." Subsequently, Randy Overley became the actual purchaser of record, although Coleman said he never spoke with Overley. Coleman said the defendant "ram-rodded" all decisions on this deal.

The defendant also met with and negotiated the construction of the log home with two local builders, John Woods, dba Colorado Log Builders and Shane Hand, dba Hand Crafted Log Homes. Ultimately, the defendant chose Mr. Hand to build the home. Hand described his contacts with the defendant as "misleading." Initially, the defendant had told Hand that he would be the owner of the home. He remembered negotiating the construction deal with the defendant who after rejecting the first proposal, accepted Hand's second proposal by affixing his signature

16

on August 2, 1999. Later, the defendant described Randy Overley's involvement to Hand as that of a long-term friend who looked better on paper to the bank.

(D) According to real estate agent Kelly Williams and Roger Guzman, previous owner of the properties was known as Fresh Start/Texaco Food Mart at 7710 Brighton Road, the defendant and Scott Lambert, acting in concert, negotiated this real estate transaction. The defendant was communicating with broker Kelly Williams via fax transmissions from Parker Place as early as August 2, 1999. These communications also included a letter from the defendant signed and dated August 18, 1999, which begins "Dear Kelly: Scott and I just wanted to let you know that things are proceeding according to schedule as to our due diligence and obtaining our financing." It refers to "our lenders and accountants" and notes, "we met with our accountants this morning to go over their analysis." The defendant was present and involved during the meetings up to and including the closing on October 19, 1999. Ms. Williams believed the defendant to be the buyer and Lambert his broker. Lambert accepted a broker's commission of $65,000. The total amount of this transaction was $2,225,454.

Texaco products wholesalers Gwen and Bill Gallagher of Denver described the defendant as Scott Lambert's "silent partner" who was seen at the gas station/food mart the day of its sale. He was also seen by Bill Gallagher emptying the coin boxes at the laundromat.

5.) **Leaving the Judicial District Without the Permission of the Probation Officer:**

On or about May 15, 1999, the defendant traveled to Addison, Texas, returning to Colorado on May 16, 1999. On or about June 21, 1999 and July 1, 1999, the defendant traveled to Cheyenne, Wyoming. This travel was without the knowledge or permission of the probation officer.

This charge is based on the following facts:

On April 6, 2000, pilot Michael Plumer was interviewed. He recalled providing flying lessons to the defendant beginning January 13, 1999, through July 20, 1999. Flying out of Centennial Airport in Englewood, they flew to Addison, Texas on May 15, 1999, returning on May 16, 1999. They flew a Beech Baron Twin provided by the Aspen Flying Club of Centennial Airport. Mr. Plumer also recalled flying with the defendant to Cheyenne, Wyoming. Flight logs provided by Plumer reflect the Addison, Texas trip noted above and flights to Cheyenne, Wyoming on June 21, 1999 and July 1, 1999.

Also present on the Addison, Texas trip was another flight instructor, Matt Heinlein. He was interviewed on April 12, 1999. His flight log also reflected the Addison, Texas flight. He recalled the defendant as "some sort of apartment or office landlord."

Both Plumer and Heinlein recall traveling around Addison, Texas with the defendant in a Rolls Royce driven by the defendant's friend.