IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 99CR408

UNITED STATES OF AMERICA,
Plaintiff,

vs.

DAVID ST. GERMAIN,
Defendant.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 2 8 2001

JAMES R. MANSPEAKER
CLERK

BY _____

---

REPORTER'S TRANSCRIPT
VIOLATION HEARING

---

Proceedings before the HONORABLE EDWARD W.
NOTTINGHAM, Judge, United States District Court for the
District of Colorado, commenced at 9:23 a.m. on Tuesday,
February 20, 2001, in Courtroom C-201, United States
Courthouse, Denver, Colorado.


A P P E A R A N C E S


For the Plaintiff:          THOMAS O'ROURKE, ESQ.
                            United States Attorney's Office
                            1225 17th Street, Ste. 700
                            Denver, Colorado
                            CHRISTOPHER ALBERTO, ESQ.
                            United States Attorney's Office
                            Boston, Massachusetts


For the Defendant:          WILLIAM A. COHAN, ESQ.
                            8910 University Center Lane
                            San Diego, California



THERESE LINDBLOM,CSR,RMR,CRR
1929 Stout Street, Box 3562, Denver CO 80294
Proceedings Reported by Mechanical Stenography
Computer-Aided Transcription


EXHIBIT A-11

13

1   obligations. We would request we be permitted to do that

2   before Your Honor imposes a sentence in this case.

3            THE COURT:  Mr. O'Rourke.

4            MR. O'ROURKE:  There have been discussions, Your

5   Honor; but there are no agreements.

6            THE COURT:  I hear you saying the same thing, Mr.

7   Cohan, discussions but no agreements.  The Government is not

8   agreeing to recommend anything.

9            MR. COHAN:  My understanding is the Government is

10  not agreeing to recommend anything.  I think Mr. Alberto has

11  indicated a willingness to work with Mr. St. Germain in

12  making these restitution payments and the business activities

13  that are essential to maximize the realization of those

14  efforts, but there are no promises.  And it's really for Your

15  Honor to make a determination as to whether and under what

16  circumstances Mr. St. Germain would be permitted to do that.

17           I think Mr. Alberto is willing to go along with

18  that, feels that would probably be beneficial to the

19  collection activities.

20           If I may speak, Mr. Alberto can certainly correct

21  me.

22           THE COURT:  Mr. Alberto, do you disagree with

23  anything that he said?

24           MR. ALBERTO:  Your Honor, there is no agreement

25  between the parties at this time.  My main mission here and

1   with the St. Germain case is to enforce the criminal
2   restitution order that was imposed by the Massachusetts
3   court.

4           Mr. St. Germain about three weeks ago and I
5   conducted depositions here in Denver, and there were five
6   individuals that were deposed.  Mr. St. Germain was one of
7   them.  He pled the Fifth to all the questions I asked but has
8   since at -- has taken a different tack and is fully
9   cooperating and providing me -- the Government with a lot of
10  information that's going to make a civil suit, if one is
11  necessary, to recover real estate interests and assets.

12          I do agree with Mr. Cohan in the sense that Mr. St.
13  Germain is a talented, experienced real estate individual,
14  somebody that has a lot of experience in real estate.  And
15  proposing that sentencing be delayed for six months so he can
16  raise the money to pay for the restitution order and the
17  sentence being delayed would provide a motive or an incentive
18  for Mr. St. Germain to pay the full $560,000.

19          THE COURT:  Okay.  But there is no agreement?

20          MR. ALBERTO:  There is no agreement.  That's a
21  proposal.

22          THE COURT:  That's the discussion.  The Government
23  is not agreeing to recommend that.  That's going to be Mr.
24  St. Germain's proposal.

25          MR. ALBERTO:  Correct, Your Honor.

THE DEFENDANT: I have.

2          THE COURT: Has he been able to fully explain the

3    materials in the report and to answer all of your questions?

4          THE DEFENDANT: Yes, he has.

5          THE COURT: As a result of that, do you believe you

6    understand what the alleged violations are in this case?

7          THE DEFENDANT: I understand them and the gravity

8    of the situation, yes.

9          THE COURT: And do you believe you understand the

10   facts that underlie or -- that are the basis of the alleged

11   violations?

12         THE DEFENDANT: Yes, I do.

13         THE COURT: And you are proposing, as I understand

14   it, to admit all of the alleged violations?

15         THE DEFENDANT: Yes, I am.

16         THE COURT: And those alleged violations are

17   contained in the probation violation report contained

18   November 1, 2000, correct?

19         THE DEFENDANT: Yes, they are.

20         THE COURT: To be specific, you are agreeing to

21   admit the conduct underlying Violation No. 1; is that right?

22         THE DEFENDANT: Yes, Your Honor.

23         THE COURT: And more specifically, as clarified by

24   Mr. Cohan earlier in this proceeding, you are agreeing to

25   admit that you violated the law in violation of the terms and

conditions of your probation?

2      THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  And as he said, you're not pleading

4  guilty to the underlying crime of obstructing justice.  You

5  are pleading that you are admitting the conduct violating a

6  term and condition of probation?

7           THE DEFENDANT:  Exactly, Your Honor, yes.

8           THE COURT:  All right.  Similarly, with respect to

9  No. 2, you are admitting that you violated the law by

10  submitting a false statement, correct?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  With respect to No. 3, you're admitting

13  that you failed to report as directed?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  With respect to Violation No. 4, you

16  are admitting that you failed to obtain your probation

17  officer's prior approval before becoming involved in any real

18  estate transaction.

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And as to No. 5, you are admitting to

21  leaving the jurisdiction without permission of the probation

22  officer, correct?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Now, I inquired a moment ago of the

25  lawyers whether there was any understanding or agreement in

1   this case which has induced you to make these admissions.

2   And what I want to ask you now is whether there is anybody,

3   Mr. Cohan or anybody from the Government, who has made any

4   promises to you in an effort to get you to make these

5   admissions or on which you are relying in making these

6   admissions.

7            THE DEFENDANT:  No, nobody has made any promises to

8   me, Your Honor.

9            THE COURT:  Are you fully satisfied with the

10  counsel, representation and advice given you in this case by

11  Mr. Cohan as your attorney?

12           THE DEFENDANT:  Yes, I am.

13           THE COURT:  Have you told him everything you know

14  about these alleged violations?

15           THE DEFENDANT:  Yes, I have.

16           THE COURT:  Have you discussed with him whether you

17  should be making the proposed admissions?

18           THE DEFENDANT:  Yes, we've discussed that.

19           THE COURT:  Have you discussed with him your rights

20  with respect to this supervised release violation -- I keep

21  calling it supervised release.  Let me start over.

22           Have you discussed with him your rights with

23  respect to this hearing concerning the allegations that you

24  have violated the terms and conditions of your probation?

25           THE DEFENDANT:  I have.

Franktown, Colorado on 13 acres.

2          Mr. St. Germain found the property, negotiated the

3     deal.  And, in fact, not only did he act as the general

4     contractor in constructing this residence, but he invested

5     over $100,000 in cash and checks.   And we have the receipts

6     and the canceled checks with which to establish that.   And we

7     will cooperate with the Government or do whatever is

8     necessary in terms of litigation to perfect Mr. St. Germain's

9     claim to his equitable ownership.

10          He actually was able as the general contractor to

11     basically complete the bulk of the construction of that log

12     home.  And Mr. Overley in his deposition minimized the amount

13     of Mr. St. Germain's accomplishments.  He characterized Mr.

14     St. Germain's completion of the project, quote, he thought it

15     was maybe he got the foundation in and the logs delivered.

16     We can establish that in fact the roof and the walls were

17     completed and the interiors were being completed, and it was

18     75 or 80 percent built, at least.

19          Mr. Overley also testified that he thought Mr. St.

20     Germain had only contributed something like 20 or $30,000,

21     when we will be able to prove that it's $110,000 or more.

22     And, of course, we will assign the proceeds of that to the

23     United States and the bank in furtherance of satisfying the

24     restitution obligation no matter what the Court does, Your

25     Honor.

1    But it will be much more effective if Mr. St.

2    Germain is at liberty.  I think Mr. Alberto would agree it

3    would be easier and more effective to do that.  The value of

4    that real estate now is approximately $700,000, against which

5    there is debt of roughly $330,000, so that he's -- and Mr.

6    St. Germain is reminding me that Mr. Overley has invested

7    roughly $100,000 as well.

8            So the after-sale equity would be in the

9    neighborhood of 3 to $350,000.  We believe half of that

10   equitably belongs to Mr. St. Germain, as trustee for the

11   United States and the bank.  And that's the way we approach

12   that transaction.  And we intend to go forward however,

13   really, the Government and the bank want us to proceed to

14   realize that, either to litigate it to maximize or to settle

15   it.  And we would leave the determination of how to do that

16   in the hands of the Government, with our assistance.

17           THE COURT:  Well, let's return to the Parker Place

18   matter for a moment.

19           I understand your contention concerning the fact

20   that it would be better if Mr. St. Germain were managing it.

21   However, even if that weren't the case, the Government

22   through Mr. St. Germain certainly has a claim to that

23   property, that is, a claim that can be litigated on the

24   theory that Mr. St. Germain took money that should have been

25   paid to the Government and invested it in this property,

1    give you 30 days to see where you are in terms of this health

2    problem that evidently arose last Friday and yesterday.

3             Anything further?

4             MR. O'ROURKE:  No, Your Honor.  Thank you.

5             THE COURT:  Mr. Cohan, anything on behalf of the

6    defendant?

7             THE DEFENDANT:  No.

8             MR. COHAN:  Nothing.

9             THE COURT:  Very well.  Court will be in recess.

10            Mr. Probation officer, did you have anything?  You

11   looked like you wanted to say something.  Did I look --

12   overlook a detail?

13            PROBATION OFFICER:  Not that I'm aware of, Judge.

14            THE COURT:  I don't sentence very often under old

15   law, so I'm not as familiar with that as I am with the new

16   law.

17            Court will be in recess.

18            MR. ALBERTO:  Thank you, Your Honor.

19            (Recess at 11:20 a.m.)

20                    REPORTER'S CERTIFICATE
              I, Therese Lindblom, Certified Shorthand Reporter,
21   Registered Merit Reporter, and Official Court Reporter to
     this court, do hereby certify that I was present at and
22   reported in shorthand the proceedings in the foregoing matter
     and that the foregoing official transcript is a full and
23   accurate record of the proceedings in this matter on the date
     set forth.
24            DATED this 27th day of March, 2001.

25                    _____
                      Therese Lindblom, CSR,RMR,CRR
                      Official Court Reporter