UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | ) | |
| | ) | |
| V. | ) | 99-CR-408-N |
| | ) | |
| David B. St. Germain | ) | |

### AFFIDAVIT IN SUPPORT OF SENTENCE REDUCTION

I, Christopher Alberto, do hereby state that,

I am an Assistant United States Attorney within the District of Massachusetts and I serve as the Chief of the Financial Litigation Unit.

St. Germain was indicted of conspiracy, bank fraud and false statements on November 21, 1995 in the district of Massachusetts. Since his release from prison, he has been under the supervision of the United States Probation Department in Denver Colorado. During the year 2000, I received a call from John Perry, Deputy Chief of the United States Probation Office here in Boston who indicated that a probation officer in Denver Colorado was in the process of investigating David St. Germain for various probation violations but had also come across evidence that St. Germain had assets which would be able to pay off St. Germain's restitution order. These assets and income were not being reported the Probation Department. Since the District of Massachusetts maintained jurisdiction over St. Germain, our unit was responsible for investigating these concerns.

I assigned my investigator, Patrick Ormond, to research the assets of St. Germain and his

EXHIBIT A-15

EXHIBIT 1

associates. It turned out that St. Germain had financial interests in several parcels of property and also in a local entertainment establishment. The associates who helped St. Germain hide his interest were, Scott Lambert, Randy Overly and Robert Berliner.

Since his sentencing for probation violations St. Germain has been cooperative with our efforts to enforce the restitution order imposed upon St. Germain and his co-defendant, Marc Loiselle and Joseph Coakley, a defendant in a related matter. For example, St. Germain has provided useful information as to the acquisition and ownership/holding of his assets which are held in the name of randy Overly, Scott Lambert and Robert Berliner. He has also provided information relating to assets owned by a co-defendant, Joseph Coakley, which Coakley owns through straws.

St. Germain's cooperative efforts include, but are not limited to, the following:

St. Germain has provided full, complete and detailed information in describing all purchase transactions of real estate and businesses, the circumstances, dates, times, participants and events leading up to the purchases and all individuals involved in the transactions. These detailed descriptions were provided to the following government agents and attorneys, at the following times and places:

1. Meeting with myself, Tom O'Rourke (District of Colorado), Scott Lambert, his attorney, David Miller, St. Germain and his attorney William A. Cohan. This meeting took place in Assistant U.S. Attorney Tom O'Rourke's Denver office on February 19, 2001.

2. At St. Germain's probation revocation hearing/re-sentencing hearing in Judge Nottingham's Denver Courtroom on February 20, 2001.

### Parker Place Office Building

St. Germain has provided complete details as to the purchase of this property. The summary of these details is as follows:

1. Description of original purchase of apartment buildings in Denver prior to his indictment in early 1995, including partnership arrangements, transfer/sale of his interest and ultimate sale of these properties during 1996.

2. Description of how the proceeds from the sale of these apartment buildings were applied towards the purchase of Parker Place.

3. Details included the amount placed down on Parker Place ($125,000 of it was St. Germain's), the entity that took title to the property and who the principals of the entity are and have been, both officially and silently.

4. Included a description of percentage of ownership of all persons, including St. Germain.

Mr. Scott Lambert, who previously was not receptive to settling by paying any significant dollar amount based on pressure the government was exerting on him, became willing to agree to a settlement, after and as a result of information provided by St. Germain. Thus, as a direct result of St. Germain's cooperation, there is an agreement about to be in place providing for a $125,000 payment from Mr. Lambert, to be applied directly to St. Germain's restitution balance.

**Log Home In Franktown, Colorado:**

St. Germain entered into a joint venture with Randy Overley to purchase 13 acres of land and construct a 3,850 S.F. log home. St. Germain was the general contractor and planned to occupy the property upon completion.

St. Germain provided documentation showing his personal investment in the construction of this house, which presently has an estimated market value of $900,000. In addition to his invested funds, St. Germain acted as the general contractor for constructing the residence and, accordingly, has a major interest in the equity of this property, as confirmed by Overley in his deposition taken in January of 2001.

The information provided by St. Germain is as follows:

1. Copies of canceled checks and cash receipts from St. Germain to various contractors, sub-contractors, vendors and suppliers, totaling over $110,000.

2. Names of contractors and sub-contractors he hired for the construction of the house.

3. Details on how he located a 13 acre parcel of land and negotiated the purchase of such land, in the name of Overley, on his behalf.

4. Details on how he negotiated, along with Overley, but solely in Overley's name, construction financing for the house.

5. Financial details as to how much both he and Overley have personally invested in the property, the amount of the mortgage and approximate market value.

6. As a result of this information, we believe there is approximately $300-350,000 in equity in this house, along with the $110,000 in cash invested by St. Germain personally.

4

7.      The canceled checks and cash receipts provided by St. Germain, along with statements made by Overley under oath, has given the government ample evidence to proceed with a lawsuit against Overley. This supporting documentation provided by St. Germain has made the government's case against Overley a very strong one. This documentation would have been very difficult to obtain, short of St. Germain turning it over.

8.      In addition, St. Germain has had other dealings of which he has informed the government and which can be used to negotiate a favorable settlement. These dealings involve the purchase of a Harley-Davidson motorcycle valued at $22,000 (a large portion of which was paid for by St. Germain), purchased by Overley and titled in his name, on St. Germain's behalf, which Overley has since taken from St. Germain and sold to his brother.

**Grizzly Rose - Robert Berliner**

St. Germain coordinated the negotiation and purchase of this large country and western night club in Denver. He brought four investors together to provide the funds necessary for the transaction. The information he has provided will prove to be useful and valuable if the government decides to pursue collection of restitution funds in this instance. Information provided is as follows:

1.      Identified the participant and investors in this deal. The purchaser is named Robert Berliner, backed by three investors brought in by St. Germain.

2.      Details as to the transaction and management of the business.

3.      Chronology of events culminating in St. Germain and his investors being banned

5

from the establishment by Berliner, even though Berliner only owned 30%.

4. St. Germain provided documents showing Berliner's personal expenditures. Such documents include credit card itemized bills, vehicle lease bills, house mortgage documents showing a loan received while Berliner was the "documented" owner of the Grizzly Rose, as well as monthly payment amounts and bank safety deposit box lease papers.

5. St. Germain provided information as to the name and location of both Berliner's mother and sister, as persons who would have information as to his claims and statements made under oath. As a result of this information, the government was able to locate and depose Berliner's mother and sister, both of whom made statements in contradiction to Berliner's statements.

6. St. Germain's attorney (William A. Cohan of San Diego, California) attended three depositions in New York in May, 2001, and was very helpful in extracting valuable information that the government can use if it decides to pursue Berliner.

7. St. Germain has provided the government with the names of two former girl friends of Berliner who may have witnessed Berliner visit and withdraw large amounts of cash from his safety deposit box on numerous occasions.

8. St. Germain provided the government with a check book and register in Berliner's name that was used by St. Germain for his share of cash flow from the Grizzly Rose. The check book had blank checks all signed by Berliner for St. Germain's personal use. Berliner did this to assist St. Germain in hiding funds from the government.

9. As a result of documentation and information provided to the government by St. Germain, we feel we have significant evidence that indeed Berliner has a substantial amount of

cash, which was taken from St. Germain and the other investors/owners (which include Lambert and Overley). Should the government decide to pursue Berliner to his recent Las Vegas address, this information will prove valuable.

### Texaco Convenience Store/Laundromat/Car Wash

St. German has provided all information relevant to the negotiation and purchase of this property, to wit: (1) Name of his partner and ownership percentages in this deal; (2) Price paid and amount put down, including source of funds; (3) Cash flow analysis (loses money); (4) Financing information.

### Joseph Coakley, Jr. - South Florida Assets

In addition to St. Germain's Colorado associates, St. Germain assisted this office in learning more about Jospeh Coakley, a convicted felon known by St. Germain. Coakley pled guilty to one count of bank fraud sometime around 1993, for which he was sentenced to three months in a half-way house and three years of probation. He also was ordered to pay restitution of approximately $190,000. The transaction for which he pled guilty to bank fraud (559 Broadway, Lowell, MA) was also one of the eight counts to which St. Germain pled guilty. This $190,000 is also part of St. Germain's $600,000 restitution, with the same victim bank in both

7

instances. Coakley has paid less than $10,000 during his probation and has ceased making payments since his probation ended.

St. Germain provided information relating to Coakley's ownership of real estate. This information was provided to my investigator via correspondence to Mr. Ormond through St. Germain's attorney and also in a phone call on February 7th, 2002 between St. Germain and Ormond.

The information St. Germain provided included St. Germain's knowledge of Coakley's purchases of property by Coakley. St. Germain described Coakley's methods of hiding this ownership, namely, using his brothers' names. St. Germain described how Coakley bought numerous pieces of rental and investment property prior to his indictment and during his probation term. He related that Coakley resides and secretly owns a house located directly on the inter-coastal in Lake Worth, Florida. St. Germain described how Coakley secretly purchased a sizeable bar and restaurant in Lake Worth around 1995. St. Germain described how Coakley told him that Coakley also secured loans with favored and preferential treatment by an insider at First Union, treatment not in accordance with and outside of, First Union's lending policies. St. Germain related how Coakley is recently known to own a late model Porsche 911, as well as a boat, valued at approximately $50,000.

As a result of the information provided by St. Germain, the United States will likely enforce the $190,000 restitution order imposed against Coakley.

All in all, it appears that, as a direct result of St. Germain's full and complete cooperation and the detailed information provided directly by St. Germain, the government is very likely to obtain a larger portion of the outstanding restitution than it would have without St. Germain's

8

cooperation.

UNITED STATES OF AMERICA

By: CHRISTOPHER ALBERTO
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

Dated: 2/15/02

Subscribed and sworn to before me this 15th day of February, 2002

NOTARY PUBLIC

My commission expires:

JOANNE L. ALBANO
Notary Public
of Commonwealth of Massachusetts
My Commission Expires January 3, 2003