ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 99-CR-408-N

UNITED STATES OF AMERICA,

       Plaintiffs,

vs.

DAVID B. ST. GERMAIN,

       Defendant.

SEP 0 3 2002

---

## DEFENDANT DAVID B. ST. GERMAIN'S THIRD STATUS REPORT PURSUANT TO COURT'S ORDER ENTERED ON MARCH 20, 2002

---

       Defendant David St. Germain, by and through undersigned counsel, William A. Cohan of the law firm of WILLIAM A. COHAN, P.C., hereby submits his third status report pursuant to Court's Order entered on March 20, 2002.  AS GROUNDS THEREFOR, the undersigned states:

       1.      On or about July 1, 2002, Defendant filed his second status report pursuant to Court's Order entered on March 20, 2002.

       2.      Defendant hereby incorporates his second status report filed on or about July 1, 2002, as though set in full.  As a result of Mr. St. Germain's payments and his information leading to collections from his co-defendants, more than $200,000. towards restitution has been collected.  On or about November 26, 2001, your undersigned received a draft complaint against Randy Overley, which has never been signed or filed by the government (see copy attached

EXHIBIT A-19

hereto).

3.      Furthermore, on or about August 23, 2002, your undersigned had a telephone conference with Assistant U.S. Attorney Christopher Alberto, in which he promised your undersigned that as soon as he got back from vacation -- the first week of September, 2002 -- he would direct his full attention to finalizing and filing the complaint against Randy Overly.   See copy of letter dated August 27, 2002, memorializing your undersigned's telephone conference with Mr. Alberto attached hereto.  Another $125,000. should have been collected from Mr. Scott Lambert, but due to the government's dilatory pursuit of that settlement, Parker Place has lost revenue from an occupancy rate that has declined to 50% and Mr. Bill Pierce, who was to contribute to the Lambert settlement, has recently been laid off from his employment.  (See copy of "Settlement Agreement attached hereto.)

WHEREFORE, Defendant David St. Germain respectfully submits this third status report pursuant to the Court Order entered on March 20, 2002, and further requests his immediate release to pursue the claims described in his second status report.

RESPECTFULLY SUBMITTED this 28th day of August, 2002.

WILLIAM A. COHAN, P.C.


By: _William A. Cohan_
     William A. Cohan (#7426)
     8910 University Center Lane, Suite 550
     San Diego, CA 92122-1026
     (858) 550-9095
     (858) 550-9049 (FAX)

     Attorney for Defendant
     DAVID B. ST. GERMAIN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of August, 2002, I did deposit a true and correct copy of the foregoing, DEFENDANT DAVID B. ST. GERMAIN'S SUPPLEMENT TO THIRD STATUS REPORT PURSUANT TO COURT'S ORDER ENTERED ON MARCH 20, 2002, with sufficient postage affixed thereto, addressed to the following:

THOMAS O'ROURKE, ESQ.
Assistant U.S. Attorney
1225 - 17TH Street, Suite 700
Denver, CO 80202

MICHAEL WILSON
U.S. Probation Officer
1961 Stout Street, Suite 525
Denver, CO 80294

*Alicia Cisneros*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>v.<br><br>RANDY OVERLEY, CREATIVE PACKAGING<br>& DESIGN, COMPUTER PRODUCTS &<br>DISTRIBUTION, CUSTOM PROMOTIONS &<br>DISTRIBUTION, and DAVID ST. GERMAIN,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>DRAFT |

The United States of America, through its attorney, United States Attorney John W. Suthers, District of Colorado, acting on behalf of the United States and its various agencies, hereby submits the following as its Complaint in this matter:

I.    **INTRODUCTION**

1.    On October 26, 1995, the Defendant, David B. St. Germain ("St. Germain"), was convicted in the United States District Court for the District of Massachusetts on nine counts of bank fraud, conspiracy and making false statements to a bank in connection with loans that he had with MetroWest Bank, formerly known as Framingham Savings Bank.

2.    The Court sentenced St. Germain to serve one year in prison, a five year term of supervised release, and ordered him to pay his victim $600,000.00 restitution.

3.    On July 23, 1996, the sentencing court imposed a special condition of supervised release, that he shall not be involved in any real estate transactions without the prior approval of the probation officer.

4.      During St. Germain's supervised release, he paid only $12,666.00 on the restitution order.

5.      While St. Germain was on supervised release, the Probation Department for the District of Colorado, as well as the Justice Enforcement Team of the U.S. Attorney's Office for the District of Massachusetts, began to investigate whether St. Germain was concealing his assets and monies accumulated during supervised release.

6.      That investigation revealed, *inter alia*, that St. Germain pursued a systematic scheme to conceal assets and monies during supervised release in order to escape paying his $600,000 criminal restitution order.

7.      The investigation also revealed that Defendant Randy Overley ("Overley") caused, facilitated or assisted in a concealment of St. Germain's assets and monies, including, but not limited to, a large newly constructed house Castlewood Canyon Road in Franktown, Colorado ("House").

8.      Overley, inter alia, agreed to be a straw owner of the House in order to assist St. Germain's efforts to conceal assets.

9.      The United States has filed this civil action: (1) to pierce the façade of false ownership of the House meant to defraud his victim of the restitution payments to which it is entitled; (2) to recover assets to enforce St. Germain's $600,000.00 restitution order plus the accumulated interest thereon; and (3) to insure that the criminal justice goals of restitution, deterrence and rehabilitation are achieved.

10.     Count I of this Complaint, seeks, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., a declaration, inter alia, that St. Germain is the true owner of the House held in Overley's name. Count II of this Complaint, seeks, pursuant to

common law fraud theory, to hold Overley liable for an amount equal to the unpaid portion of St. Germain's restitution order for his part in their joint scheme to defraud and deceive St.Germain's victim. Count III of the Complaint seeks to hold Overley and St. Germain, jointly and severally liable, pursuant to a theory of civil conspiracy for facilitating and assisting a scheme to deceive and defraud St.Germain's victim of its restitution payments. Count IV seeks to hold Overley liable, pursuant to the theory of aiding and abetting, for aiding St. Germain's scheme to conceal assets. Count V seeks to hold Overley and St. Germain liable, pursuant to a theory of joint venture, for the joint efforts to purchase and build the House, and to conceal St. Germain's ownership interest in it.

## II.      PARTIES

11.      The Plaintiff, the United States of America, is a sovereign entity and body politic.

12.      The Defendant, St. Germain, currently resides at the Colorado Federal Prison, where he is serving a fifteen year sentence imposed by the Honorable Edward W. Nottingham, United States District Judge for the District of Colorado, for violating the terms and conditions of his probation and supervised release.

13.      The Defendant, Overley, is an individual over the age of 18 years, and is a resident of 2731 West Wolfensberger Road, Sedelia, Douglas County, Colorado 80135.

14.      The Defendants, Creative Packaging & Design, Computer Products & Distribution, Custom Promotions & Distribution, are located at 2731 West Wolfensberger Road, Sedelia, Douglas County, Colorado 80135.

### III.   JURISDICTION AND VENUE

15.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and 18 U.S.C. §§ 3613 and 3664.

16.   This Court has venue under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the District of Colorado.

### IV.   FACTUAL ALLEGATIONS

17.   The United States realleges and incorporates paragraphs 1 through 16 of this Complaint as if fully set forth herein.

18.   St. Germain and Overley knew each other since approximately 1992.

19.   After St. Germain's release after his initial incarceration, Overley agreed to falsely represent to the United States Probation Office that he employed St. Germain.

20.   In order to further this scheme, Overley issued false paychecks to St. Germain.

21.   St. Germain would deposit the paychecks into his account and then reimburse Overley the gross amount of the salary allegedly paid to St. Germain.

22.   Overley would profit from the scheme because St. Germain agreed to pay Overley the alleged gross amount of the paycheck, an amount greater than the net amount actually paid to St. Germain.

23.   Overley knew that the Defendant owed $600,000.00 in restitution and was aware that maintaining St. Germain on his low paying payroll would by necessity result in a low restitution payment.

24.     In or about April 1999, St. Germain arranged for Overley to accompany him to the First Bank of Founders Parkway in Castlerock, Colorado in an effort to obtain a construction loan to build the House at Castlewood Canyon Road in Franktown, Colorado.

25.     Although the loan was made in Overley's name, St. Germain was the proponent for the loan.

26.     St. Germain also arranged for Overley to hold title to raw land where the House was to be constructed.

27.     On or about January 14, 1999, St. Germain contacted Rocky Mountain Houses of Hamilton, Montana, expressing an interest in purchasing House components.

28.     On or about March 18, 1999, St. Germain signed and dated a Rocky Mountain House Plan Purchase Agreement requiring the payment of $4,555.50. The payment was made by a check remitted by First Cornorstone Management, Inc., an entity in which St. Germain was also a silent partner.

29.     St. Germain also met and interviewed two local builders, John Woods, d/b/a Colorado Log Builders and Shane Hand ("Hand") d/b/a Handcrafted Home Houses to determine who would construct the House. Ultimately, St. Germain chose Hand to build the House, and assured Hand that he would be the owner of the home.

30.     St. Germain described to Hand Overley's involvement in the House as that of a long term friend who looked better on paper to the bank.

31.     In order to assist St. Germain's efforts to escape his restitution obligations, as well as the other conditions of his probation, Overley served in a variety of roles including, most importantly, as a straw owner for St. Germain. He also assisted St.

Germain in concealing his business activities and in the purchasing of real estate other than the House.

32.     Once Overley learned that the United States' investigation uncovered St. Germain's scheme to conceal assets, he began to falsely claim he was the true owner of the House, even after St. Germain confessed that he arranged for Overley to be simply a straw owner of the House.

33.     At his deposition, Overley also falsely testified St. Germain paid only $20,000 toward construction of the House.

34.     In fact, St. Germain arranged for the purchase of the new property, the construction loan, and other matters regarding the house to be done in Overley's name.

35.     St. Germain actually spent more than $100,000 to construct the House.

36.     In contrast, Overley spent nothing to construct the House.

37.     Contrary to his deposition testimony, Overley simply agreed to serve as a straw owner of the House for St. Germain, and at no time did St. Germain and Overley contemplate that Overley would actually own the House.

38.     Overley's efforts to assist St. Germain's scheme to conceal assets also include being a straw owner of several vehicles, including a Harley Davidson motorcycle.

39.     Overley also agreed to make it appear that his business employed St. Germain in order to assist St. Germain's scheme to deceive the United States Probation Office.

40.     Overley falsely maintains in deposition that he own the House since he paid for most of the construction costs, and has made the monthly payments on the construction loan.

41.     In fact, Overley began paying the monthly payments on the loan only after St. Germain expended over $100,000 constructing the House.

42.     During depositions meant to inquire into the nature of St. Germain's ownership interest in certain assets held by others, Overley admitted that: (1) he knew of St. Germain's restitution order and terms of probation; (2) St. Germain would serve as the general contractor for and occupy the House; and (3) it was St. Germain and not Overley who put the money down on the real estate.

43.     In his deposition, Overley also conceded that he lied to a probation officer about his financial arrangements with St. Germain in order to "help a friend."

## COUNT I

### Declaratory Judgment

### 28 U.S.C. §§ 2201 et seq

44.     The United States realleges and incorporates paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     The facts alleged in this Complaint create an actual controversy within this Court's jurisdiction.

46.     While on probation, St. Germain invested in, purchased land and caused the construction of a House at Castlewood Canyon Road in Franktown, Colorado.

47.     Overley is merely the nominal owner of said House.

48.     Overley serves as the straw through whom St. Germain purchased and built the House.

WHEREFORE, the United States requests that the Court declare the following:

    (1)     that St. Germain is the true owner of the House at Castlewood Canyon Road in Franktown, Colorado standing in the name of Randy Overley;

    (2)     said House is to be immediately applied to satisfy St. Germain's $600,000.00 restitution order, plus interest; and

    (3)     any other relief justice demands.

## COUNT II
### Common Law Fraud

49.     The United States realleges and incorporates paragraph 1 through 48 of this Complaint as if fully set forth herein.

50.     St. Germain falsely represented on numerous financial statements and other documents filed with the United States Probation Office during his term of supervised release that he held no ownership interest in the House or any other real estate.

51.     Overley falsely represented to the Untied Stated Probation Office that he rather than St. Germain, built, paid for and controlled the House.

52.     Reliance on St. Germain's and Overley's false statements to the United States Probation Office caused St. Germain's victim and the United States Probation Office to accept from St. Germain *de minimis* monthly payments toward St. Germain's restitution order and prevented prompt payment of the restitution order.

WHEREFORE, the United States requests that the Court order the following:

8

(1)     that St. Germain and Overley are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2)     that St. Germain and Overley are jointly and severally liable for the lost-time value of money that would have been recovered, but for their fraud; and

(3)     any other relief justice demands.

## COUNT III

### Civil Conspiracy

53.     The United States realleges and incorporates paragraph 1 through 52 of this Complaint as if fully set forth herein.

54.     Overley agreed to facilitate and assist in St. Germain's scheme to conceal his interest in and to build the House in Franktown, Colorado.

55.     Computer Packaging Design did facilitate and assist St. Germain's scheme to deceive the United States Probation Office by issuing false paychecks.

56.     Overley and St. Germain deceived and defrauded the United States by hindering the United States from recovering the wealth generated by St. Germain's secret business activities.

57.     Their conspiracy shielded tens of thousands of dollars in assets from recovery, causing St. Germain's victim to lose thousands of dollars through the depreciation of monies concealed, and causing the United States to incur thousands of dollars in investigatory costs to unravel their joint fraud.

WHEREFORE, the United States requests that the Court order the following:

(1)     that Overley, Creative Packaging & Design, Custom Promotions & Distribution, Computer Products & Distribution, and St. Germain

are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2)    that Overley, Creative Packaging & Design, Computer Products & Distribution, Custom Promotions & Distribution, and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering the conspiracy to defraud the United States;

(3)    that Overley, Creative Packaging & Design, Computer Products & Distribution, Custom Promotions & Distribution, and St. Germain are jointly and severally liable for the lost-time value of money; and

(4)    any other relief that justice demands.

## COUNT IV

### Aiding and Abetting

58.    The United States realleges and incorporates paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.    Overley assisted and facilitated, and continues to assist, St. Germain's efforts to conceal his ownership interest in and control of the House in Franktown, Colorado.

60.    Overley understood his assistance allowed St. Germain to secretly build and conceal his real estate interest in said House.

61.    Overley knew that the central goal of St. Germain's efforts in this regard was to escape paying his restitution obligation.

WHEREFORE, the United States requests that the Court order the following:

(1)    that Overley and St. Germain are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

    (2)    that Overley and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering their respective parts in aiding and abetting St. Germain's fraud;

    (3)    that Overley and St. Germain are jointly and severally liable for the lost-time value of money; and

    (4)    any other relief that justice demands.

## COUNT V

### Joint Venture

62.    The United States realleges and incorporates paragraph 1 through 61 of this Complaint as if fully set forth herein.

63.    Overley agreed to associate with St. Germain and assist him with the purchase and construction of the House in Franktown, Colorado.

64.    Overley's efforts contributed to secrete St.Germain's assets and his interest in the House, nominally and currently held in Overley's name.

WHEREFORE, the United States requests that the Court order the following:

    (1)    that Overley and St. Germain are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

    (2)    that Overley and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering their joint venture;

    (3)    that Overley and St. Germain are jointly and severally liable for the lost-time value that would have been recovered but for their joint ventures; and

    (4)    Any other relief justice demands.

UNITED STATES OF AMERICA

JOHN W. SUTHERS
United States Attorney

By:    DRAFT

LISA CHRISTIAN
CHRISTOPHER ALBERTO
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel: (617) 748-3311

Dated:

# WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

*8910 UNIVERSITY CENTER LANE, SUITE 550*

*SAN DIEGO, CALIFORNIA 92122-1026*

*TELEPHONE (858) 550-9095*

*WILLIAM A. COHAN*

*E-Mail: bill@williamacohan.com*

*FACSIMILE*

*(858) 550-9049*

August 27, 2002

**VIA FAX #(617) 748-3972**

Christopher Alberto, Esq.
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:   <u>U.S. v. David St. Germain</u>
      Case No. 99-CR-408-N

Dear Mr. Alberto:

Thank you for your prompt response to my latest entreaty to assist Mr. St. Germain by actively seeking collection of restitution: you explained that you had just finished a jury trial and were in the process of writing a letter for a Federal Judge in New Jersey who is demanding several answers. You also stated that after vacationing this week in the White Mountains you would direct your full attention to Mr. St. Germain's matter and would work on <u>nothing</u> else until you finalized and filed the Overly complaint.

Based on this latest solemn representation, I will wait to see whether you honor this promise. Thank you very much in advance for your efforts to resolve this seriously overdue restitution and release.

Sincerely,

*William A. Cohan*

William A. Cohan

WAC:ac