ORIGINA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

CASE NO. 99-CR-408-N

OCT 8 4 2002

UNITED STATES OF AMERICA,

JAMES R. MANSPEAKER
CLERK

   Plaintiffs,

vs.

DAVID B. ST. GERMAIN,

   Defendant.

---

## DEFENDANT DAVID B. ST. GERMAIN'S FOURTH STATUS
## REPORT AND REQUEST FOR IMMEDIATE RELEASE

---

Defendant David St. Germain, by and through undersigned counsel, William A. Cohan of

the law firm of WILLIAM A. COHAN, P.C., hereby submits his fourth status report (pursuant to

Court's Order entered on March 20, 2002) and request for immediate release. In addition to

Defendant's three prior status reports, this fourth status report will serve to inform the Court as to

the glacial pace of collection activity in this case, and the reasons and responsibility for the

limited success of collection efforts by AUSA Alberto. AS GROUNDS THEREFOR, the

undersigned states:

  1.  As requested, defendant St. Germain has fully cooperated with both AUSA's

Alberto's and O'Rourke's offices, by providing valuable and complete information and

documentation as to his ownership in various real estate assets. This information and

1

Exhibit A-20

54

documentation was submitted during the period of January 2001 through August 2001. The information provided is and has been more than sufficient to consummate full recovery and collection of the $400,000 restitution balance. The Court should note that this restitution obligation is a "joint and several" one with co-defendants Joseph Coakley, Jr., attorney John C. Sandelli and Marc J. Loiselle. Other than the recent settlement with Mr. Coakley, St. Germain will ultimately be the one left to pay the lion's share. Co-defendant Sandelli has paid zero dollars ($0.00) and Mr. Loiselle has paid approximately $12,000 and is no longer contributing, despite apparent ownership of real estate assets through his probation term.

2.    Other than an initial draft agreement prepared in August, 2001, between Scott Lambert/Bill Pierce and the bank, for $125,000 (see attached Exhibit "1 at A"), no further pursuit of Lambert/Pierce has been evident. At the time of the draft, Lambert and Pierce were in a position to meet the financial terms of this agreement, and the "Parker Place" office complex had ample equity and operating income to support the settlement terms. Fifteen (15) months have since passed with no further pursuit by AUSA Alberto or anyone else. The information leading to this initial agreement was provided entirely by St. Germain. Now, apparently neither Messrs. Lambert nor Pierce are financially able to meet the terms of the agreement. The "Parker Place" complex is at a 50-plus percent vacancy rate (down from 88% during St. Germain's management tenure). The property is losing money monthly, it has lost a significant amount of its market value and as a result, all of its equity. Mr. Pierce has been laid off from his job as a physicist and claims to be in difficult financial straits.

3.    Had AUSA Alberto or anyone else representing the government timely pursued this settlement with reasonable diligence during the past fifteen (15) months, the bank would be

2

$125,000 closer to receiving its full restitution payment. St. Germain provided all the information necessary for the government to conclude and collect on this agreement with Lambert and Pierce. AUSA Alberto has candidly conceded he is responsible for the failures to pursue and collect on this and the Randy Overley matter. No explanation or excuse has been offered, only repeated, empty promises.

4.     In January of 2001, St. Germain provided AUSA's Alberto and O'Rourke with original canceled checks and paid cash receipts totaling over $110,000. This represented St. Germain's actual cash investment -- in addition to his unreimbursed services as general contractor -- in a custom log home in Franktown, Colorado, ½ owned and built with Randy Overley (who now resides there). This property is a 5500 square foot custom log home situated on 13 acres, now valued at close to $1 million. St. Germain also provided valuable information as to this property and individual.

5.     In addition, during a deposition of Mr. Overley taken by Mr. Alberto, Overley admitted that he and St. Germain were indeed 50-50 owners of this property. Finally, in August of 2001, AUSA Alberto prepared a draft lawsuit against Overley to collect St. Germain's share of this asset for application to the restitution order (see attached Exhibits "1B, 2A, 3A, 4A, 5A").

6.     Furthermore, AUSA's Alberto and O'Rourke have confirmed in their "motion for sentence reduction" (with the supporting affidavit), as well as in their prior three (3) status reports that the information provided by St. Germain would most likely lead to the full satisfaction of the restitution obligation, and that St. Germain has been completely cooperative and effective (see "Motion for Sentence Reduction," and supporting affidavit and the three prior status reports filed by the government).

3

7.      Since the August, 2001, draft lawsuit, no attempt to initiate settlement

negotiations, much less the filing of the lawsuit, has been pursued vis-a-vis Mr. Overley. This is

in spite of your undersigned making literally dozens of unreturned telephone call to AUSA

Alberto's offices, offering assistance (refused; see attached Exhibits "1C, 2B"), and extracting

promises (on the several occasions where AUSA Alberto happened to answer the telephone call

himself; after hours -- see attached Exhibits "3B and 5B").

8.      As the government confirmed in its last two status reports, they were successful in

arriving at a $160,000 settlement with one of St. Germain's co-defendants, Joseph Coakley, Jr.

Please note in these updates the government's confirmation of the fact that the recovery of these

monies would not have been possible without the information provided by St. Germain. Upon

receipt of this information from St. Germain, the government merely had to subpoena several of

Mr. Coakley's family members for documents and depositions, in order to elicit an immediate

and satisfactory offer of settlement from Mr. Coakley.

9.      It would appear that serving similar subpoenaes on Overley's family members

(namely, his mother Nadine, sister Kim and brother Larry), regarding their knowledge of the

employment and the log home ownership arrangements between St. Germain and Randy Overley,

would go a long way towards prompting a quick and favorable settlement with the government

(see attached Exhibit 6A -- summarizing information given by St. Germain in the early part of

2001, to AUSA Alberto).

10.      Thus, to date, $200,000 of the $600,000 restitution obligation has been paid. That

is $160,000 (cash and secured commitments) from co-defendant Coakley, and a sum totaling

approximately $40,000 in monthly payments made collectively by St. Germain ($16,000),

4

Coakley ($12,000) and Loiselle ($12,000) during their probation terms. Presently, St. Germain is paying 100% of his $25 monthly pay while incarcerated, towards his restitution.

11.     St. Germain has gone above and beyond the level of cooperation that has been requested of him. Directly attributable to St. Germain, the $160,000 from Coakley is "found" money for the government and bank and would not have been realized, but for St. Germain. It is extremely likely that the balance of the restitution owed by St. Germain and his co-defendants would be paid in full from the Overley/St. Germain log home asset, if the government would promptly act on the information in its possession for over 20 months.

12.     It is unconscionable that St. Germain is still subject to the severe sentence he received for probation violations, notwithstanding his complete cooperation -- which would have led to full restitution had the government proceeded with reasonable diligence.

13.     The attached letter to AUSA Alberto, dated July 18, 2002, (see attached Exhibit "7"), from St. Germain directly, provides the AUSA with the level of frustration (and the unfairness causing it) St. Germain is experiencing as a result of the government's inactivity. St. Germain has also written the enclosed letter directly to this Court for the Court's consideration (see attached Exhibit "8")..

14.     St. Germain is appreciative of the Court's Rule 35 opportunity and the fact that the government did file a sentence reduction motion on his behalf, stating that he fulfilled his obligations promptly and completely.

15.     In the meanwhile, St. Germain, having done his part, is suffering unfairly because the Court tied his freedom directly to the collection efforts vel non of AUSA Alberto. St. Germain should be released forthwith based on his cooperation and the value of the information

5

he has provided.

WHEREFORE, Defendant David St. Germain respectfully submits this fourth status report pursuant to the Court Order entered on March 20, 2002, and further requests his immediate release to pursue the claims described in his previous status reports, as well as this one.

RESPECTFULLY SUBMITTED this _18th_ day of October, 2002.

WILLIAM A. COHAN, P.C.

By: _William D. Cohan_

William A. Cohan (#7426)
8910 University Center Lane, Suite 550
San Diego, CA 92122-1026
(858) 550-9095
(858) 550-9049 (FAX)

Attorney for Defendant
DAVID B. ST. GERMAIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2002, I did deposit a true and correct copy of the foregoing, DEFENDANT DAVID B. ST. GERMAIN'S SUPPLEMENT TO THIRD STATUS REPORT PURSUANT TO COURT'S ORDER ENTERED ON MARCH 20, 2002, with sufficient postage affixed thereto, addressed to the following:

THOMAS O'ROURKE, ESQ.
Assistant U.S. Attorney
1225 - 17TH Street, Suite 700
Denver, CO 80202

MICHAEL WILSON
U.S. Probation Officer
1961 Stout Street, Suite 525
Denver, CO 80294

# WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

*8910 UNIVERSITY CENTER LANE, SUITE 550*

*SAN DIEGO, CALIFORNIA 92122-1026*

*TELEPHONE (858) 550-9095*

*WILLIAM A. COHAN*
*E-Mail: williamacoha@earthlink.net*

**RECEIVED**
**OCT 1 5 2002**
**BY:**

*FACSIMILE*
*(858) 550-9049*

August 13, 2001

Mr. David St. Germain
Inmate #20222-038-i
Sandstone FCI
P.O. Box 1000
Sandstone, MN 55072

Re:   <u>U.S. v. St. Germain</u>
     Case No. 99-CR-408-N

Dear Mr. St. Germain:

This letter is written to update you on my most recent telephone conversation with Chris Alberto, Esq., which took place today.  Mr. Alberto has informed me that they have reached an agreement to settle the claims against Messrs. Lambert and Pierce for $125,000.  Walter Lupan, Esq. the bank's attorney is drafting the settlement documents and the settlement should be finalized soon.  (A)

Furthermore, the government has opened a case on Joe Coakley, Jr., and they are conducting a surveillance of him and others who are associated with him in connection with the monies which were used to purchase real estate, instead of paying the restitution.

Mr. Alberto further informed me that a lawsuit against Randy Overly is being drafted by Walter Lupan with Alberto's assistance.  Although I offered to help in any way possible in drafting pleadings etc. -- if this would be of benefit to you -- Mr. Alberto said it would not be helpful to him or you.  He stated he was willing to join in on your Rule 35 (F.R.Crim.P.) motion -- if he got permission -- once the collection process is completed.  In any event, we will be moving for a Rule 35 reduction sometime before February, 2002.  (B) (C)

Sincerely,

*Bill*

William A. Cohan

/ac



**DEFENDANT'S EXHIBIT**
**1**

## WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

*8910 UNIVERSITY CENTER LANE, SUITE 550*

*SAN DIEGO, CALIFORNIA 92122-1026*

*TELEPHONE (858) 550-9095*

WILLIAM A. COHAN

E-Mail: williamacoha@earthlink.net

October 24, 2001

*FACSIMILE*

*(858) 550-9049*

Christopher Alberto, Esq.
Assistant U.S. Attorney
Chief, Financial Litigation Unit
U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Walter Lupan, Esq.
Grassia, Murphy, Whitney
5 Commonwealth Road
Natick, MA 01760

Re:   U.S. v. St. Germain Motion for Reduction of Sentence, F.r.Crim.P. 35

Gentlemen:

I write to memorialize today's telephone discussions with Walter, who explained that he has drafted a settlement agreement with Scott Lambert and will have a complaint drafted within a week to serve on Randy Overly. Mr. St. Germain is understandably antsy about the glacial pace of the collection process to date, which has thus far yielded nothing to his credit on restitution notwithstanding his best efforts to provide cooperation via documents, information and assistance.

As you know, among other things Mr. St. Germain and I have made dozens of telephone calls, participated in depositions of Mr. Berliner's mother and sister in New York and provided detailed responses to the inquiries from investigator Pat Ormond concerning parties and real estate in Florida and California. The deadline for St. Germain's motion for reduction of sentence is February 19, 2002, and we want to do everything possible to present his cooperation as being complete, substantial and effective in collecting restitution. Please tell us, what more can we do? I know you are both very busy and this is not a particularly high priority for you. But for St. Germain you know how crucial it is. Thanks in advance for any assistance and/or direction you can provide.

Sincerely,

William A. Cohan

WAC:ac

cc:   Mr. David St. Germain

DEFENDANT'S
EXHIBIT
2

DOCUMENT #5

Ⓐ &Ⓑ

# WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

*8910 UNIVERSITY CENTER LANE, SUITE 550*

*SAN DIEGO, CALIFORNIA  92122-1026*

*TELEPHONE (858) 550-9095*

*WILLIAM A. COHAN*

*E-Mail: bill@williamacohan.com*

*FACSIMILE*

*(858) 550-9049*

July 18, 2002

Christopher Alberto, Esq.
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:   U.S. v. David St. Germain
      Case No. 99-CR-408-N

Dear Mr. Alberto:

Mr. Cohan has asked that I write you this letter confirming the telephone conversation you had with him on July 16, 2002, in which you informed Mr. Cohan that you've had a draft complaint to be filed against Mr. Overley since last August, but have not been able to finalize it because of your busy schedule. 

You further advised that you would instruct your paralegal Lori Ward to handle finalizing the complaint and getting it filed and served to expedite collection of any monies that will benefit Mr. St. Germain. 

If any of the above is not your understanding, please call the office immediately.  Thank you.

Sincerely,

*Alicia Cisneroz*

Alicia Cisneroz, Legal Assistant to
William A. Cohan

/ac

**DEFENDANT'S EXHIBIT**

3

WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

*8910 UNIVERSITY CENTER LANE, SUITE 550*

*SAN DIEGO, CALIFORNIA  92122-1026*

*TELEPHONE (858) 550-9095*

*WILLIAM A. COHAN*                                                                              *FACSIMILE*

*E-Mail: bill@williamacohan.com*                                                      *(858) 550-9049*

August 27, 2002


VIA FAX #(617) 748-3972

Christopher Alberto, Esq.
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:     U.S. v. David St. Germain
         Case No. 99-CR-408-N

Dear Mr. Alberto:

Thank you for your prompt response to my latest entreaty to assist Mr. St. Germain by actively
seeking collection of restitution: you explained that you had just finished a jury trial and were in
the process of writing a letter for a Federal Judge in New Jersey who is demanding several
answers. You also stated that after vacationing this week in the White Mountains you would
direct your full attention to Mr. St. Germain's matter and would  work on nothing else until you
finalized and filed the Overly complaint.

Based on this latest solemn representation, I will wait to see whether you honor this promise.
Thank you very much in advance for your efforts to resolve this seriously overdue restitution and
release.

Sincerely,

*William A. Cohan*

William A. Cohan

WAC:ac

bcc:   William W. Hewitt



DEFENDANT'S
EXHIBIT

5



# WILLIAM A. COHAN, P.C.

*ATTORNEY AT LAW*

8910 UNIVERSITY CENTER LANE,  SUITE 550

SAN DIEGO, CALIFORNIA  92122-1026

TELEPHONE (858) 550-9095

WILLIAM A. COHAN

E-Mail: bill@williamacohan.com

FACSIMILE

(858) 550-9049

May 7, 2002

Christopher Alberto, Esq.
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:   <u>U.S. v. David St. Germain</u>
        Case No. 99-CR-408-N

Dear Mr. Alberto:

The following is a summary of evidence, witnesses and documentation to establish Mr. St. Germain's ownership interest in the Randy Overley - log home in Franktown, Colorado:

> St. Germain constructed the log home in Franktown with Randy Overley serving as the named owner and the borrower of construction funds. The property's estimated market value is $900,000.  It is 5500 s.f. (finished) and sits on 13 plus acres just outside of Franktown Center, thus a prime location.  Overley now lives in this house.  St. Germain has provided AUSA Christopher Alberto with canceled checks and paid receipts for construction expenses totaling over $110,000.  Overley has stated under oath (Alberto's deposition) that this house was built with a 50/50 ownership understanding.  The estimated equity, after cash invested and debt, is $300,000, half of which belongs to St. Germain.  The property was put in the name of Overley, to hide St. Germain's ownership. AUSA Alberto is already aware of this as a result of St. Germain's prior cooperation.  Overley is refusing to turn over St. Germain's approximately $150,000 share.  AUSA Alberto has prepared a draft lawsuit against Overley (and St. Germain - with St. Germain's assistance), but has not yet filed it nor has he moved forward.
>
> St. Germain has contemplated bringing suit on his own, but due to the "unclean hands" premise of contract law, and the fact that there are illegalities (St. Germain hiding his ownership interest from victim Bank and probation -- Overley "aiding



**DEFENDANT'S EXHIBIT**

6

and abetting a felon to defraud federal government"), the possibility is strong that a court would rule that any contract between St. Germain and Overley is voided because of these illegalities and St. Germain would not recover his funds from the property.  Thus, the only way St. Germain can recover funds to satisfy his restitution obligation is by relying on AUSA Alberto's commencement of a lawsuit against Overley.

1.    Larry Overley:    This is Randy's older brother.  He is the owner of a fairly large excavation and landscaping company.   St. Germain hired Larry Overley to excavate the Franktown site (pre-construction), construct 150 plus yards of driveway, dig foundation hole and back fill foundation, and do general grading of the site.  The cost was approximately $25,000, which St. Germain paid in cash, less a 10% discount offered by Larry Overley for cash.  Larry Overely was well aware of the house ownership arrangement.

2.    Nadine Overley:    Nadine Overley is Randy's mother, who worked part time for Randy.  During the construction of the house by St. Germain, Randy had been leasing a small office space down the hall at Parker Place from Lambert and St. Germain.  Thus, St. Germain would see Nadine Overley 2 or 3 times per week.  Nadine Overley was always asking how the house was coming along and would also comment on how impressive it was turning out to be as it was being built, based on occasionally driving to the site when visiting Randy, who lived about 10-12 miles away.  Nadine Overley was well aware of the 50/50 ownership.  She assisted daughter Kim (see below) who worked full time for Randy, in keeping reimbursement records of the dealings between St. Germain and Randy.  She was also aware of the sham employment arrangement, described below.



3.    Kim (last name unknown):    Kim is Randy's sister.  She worked full time for Randy.  She was fully aware of the house deal.  Furthermore, she kept the ledger for Overley tracking the reimbursements St. Germain owed Overley for payroll checks, employer's share of FICA (St. Germain was working for Overley under a "NO SHOW" arrangement - false employment.  He reimbursed Overley for the paychecks.  Overley claimed these payroll expenses, as well as other business expenses -- cell phone and leased vehicle used by St. Germain and reimbursed to Overley -- and land and construction loan payments on his income taxes over 3 years (estimated to approach $40,000 in fraudulent deductions).  She was aware of the sham employment arrangement, as well as the house ownership arrangement.  She was the bookkeeper for all of it.

DOCUMENT #7

July 18, 2002

Attorney Christopher Alberto
Assistant U. S. Attorney's Office
Massachusetts District

Dear Attorney Alberto:

I'm writing you to inquire as to the reason behind the slow pace at which your office has been moving in its attempt to recover funds against my restitution.

In going through my files recently, I came to realize that it has been nearly one year since your office (in conjunction with Attorney Lupan) prepared a draft lawsuit against Randy Overley.

In light of the recent prompt success in taking action against Joseph Coakley, the fact that the Overley lawsuit has remained stuck in neutral for nearly one year confounds me. As you have stated in your court filings, I have provided your office with everything you will need to prevail against Overley, to wit:

1. Copies of cancelled checks and cash receipts for construction costs paid by me, totalling approximately $110,000.

2. Confirmation of statements made under oath by Overley to you that he and I were indeed in agreement on a 50 - 50 split as to the log home's equity. Note: The estimated market value for this property is approaching $1,000,000.

3. Full cooperation and complete disclosure as to my employment arrangement with Overley, as well as all details as to the planning, purchase and construction of the log home, have all been provided by me. All of this information and offered testimony from me will, in all liklihood, allow you to prevail in this lawsuit and as a result, make full collection on the remaining restitution balance.

4. Complete information regarding $10,000 owed to me by Overley as to a Harley Davidson motorcycle purchased by me, in Overley's name. Overley has acknowledged retaining posession of this asset.

5. It is common knowledge that Overley has ample ability to meet the ultimate financial obligation that a judgement in your favor will create, promptly.

6. As was the case with Coakley, it is highly probable that Overley will strongly consider settling once he is met with some kind of pressure from your office, namely, the filing of the lawsuit and deposition of Overley's family members.

Unfortunately, the same scenario has unfolded as to the agreeement with Scott Lambert. The agreement for $125,000 was originally drafted a year ago, yet there has been no further progress. As a result, the real estate assets in question have deteriorated in value by at least 35%, due to inept management and a softening commercial real estate market over the past 18 months. I am now hearing substantiated rumors that Lambert and Pierce no longer possess the financial ability to meet the terms of this agreement.



DEFENDANT'S
EXHIBIT
17

If I appear to be coming across as a little perturbed as to the idleness of these matters, please forgive me.  It is only because Judge Nottingham seems to be tying my liberty to the collection of these monies.  Thus, when I see that no attempt is being made to make use of my cooperation efforts, and the judge is seeing it as fair to tie his ruling on my freedom to the actions of your office, yes, it is a little bothersome, to say the least.

In closing, I just want to say that, justly or not, it is obvious that the judge is linking my liberty to the collection efforts and success of your office. I find it unfair that, for reasons unknown, your office for the last year, has chosen to put forth zero apparent effort in making use of the information I have provided.  I have held up my side of the deal by giving full cooperation towards the collection of these monies.  As a result of my efforts, your office has ample opportunity to collect the funds that will fully satisfy my restitution obligation.

Judge Nottingham sentenced me to 15 years for probation violations under Rule 35 (despite an agreement of 18 months with AUSA O'Rourke's office).  While I was certainly stunned by the severity of the sentence, I was also appreciative of the opportunity from the court to work with your office in paying off this restitution (keeping in mind that it is a joint and several obligation with my co-defendant Loiselle, of which I will ultimately be the one paying 95% of the $600,000).  I have done everything possible in this regard, and then some (Coakley information) to effectuate this likely payment in full.

While I am most appreciative of your Rule 35 motion filed on 2/19/02, I am also asking that you take action with the information I have provided your office, so that the judge will have what he needs to rule on a fair sentence reduction.

Sincerely,

David B. St. Germain

cc: Atty. Walter Lupan
    USPO Michael Wilson
    AUSA Thomas O'Rourke
    Judge Nottingham