IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 99-CR-408-N

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID B. ST. GERMAIN,

    Defendant.

---

## GOVERNMENT'S FOURTH STATUS REPORT

---

The United States of America, by and through Assistant United States Attorney Thomas M. O'Rourke, submits this status report in response to this court's order of March 20, 2002.

That order was the court's response to the Government's Motion for Reduction of Sentence, which was accompanied by an Affidavit in Support of Sentence Reduction.

In that affidavit, Assistant United States Attorney Christopher Alberto described the efforts of the defendant David St. Germain to assist the government in enforcing the restitution order that was entered against Mr. St. Germain and his co-defendants Marc Loiselle and Joseph Coakley.

On May 1, 2002, the United States submitted the Government's Status Report, which included Mr. Alberto's report that since the date of his affidavit, Mr. St. Germain had continued to cooperate.

EXHIBIT A-21

On July 1, 2002, the United States filed its second status report, which said the United States had collected $100,000 from Mr. Coakley and had his agreement to pay another $60,000 over two years. The second report also said Scott Lambert had agreed to pay $125,000 to settle possible claims against him.

On August 29, 2002, the United States filed its third status report, stating that the U.S. Attorney's Office in Boston was continuing to negotiate with Mr. Lambert and with another associate of the defendant, Randy Overley, who apparently was involved in helping hide assets.

On October 28, 2002, Assistant U.S. Attorney Christopher Alberto informed the undersigned that he has drafted a civil complaint against Mr. St. Germain and Mr. Overley, which would be designed to hold Mr. Overley liable for the unpaid portion of Mr. St. Germain's criminal restitution order because of Mr. Overley's efforts to help Mr. St. Germain conceal income and assets. Mr. Alberto said the complaint also would be designed to recover the costs of litigation. A draft of the complaint is marked as

Exhibit 1 and is attached to and incorporated by reference into this status report.

On October 29, 2002, Mr. Alberto informed the undersigned that he has reached a tentative settlement with Mr. Lambert under which Mr. Lambert will pay $90,000.

Respectfully submitted,

JOHN W. SUTHERS
United States Attorney

By:   Thomas M. O'Rourke
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

This is to certify that on the 29th day of October 2002, a copy of the foregoing Government's Fourth Status Report was placed in the United States Mail, postage prepaid, addressed to:

> William Cohan, Esq.
> 8910 University Center Lane
> Suite 550
> San Diego, California 92122-1026
>
> Michael Wilson
> U.S. Probation Officer
> 1961 Stout Street, Suite 525
> Denver, Colorado 80294
>
> Christopher Alberto
> Assistant U.S. Attorney
> United States Attorney's Office
> 1 Courthouse Way
> United States Courthouse, Suite 9200
> Boston, Massachusetts 02210

Brenda Sunderland
United States Attorney's Office

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff* | ) | **DRAFT** |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| RANDY OVERLEY and | ) | |
| DAVID ST. GERMAIN, | ) | |
|     *Defendants* | ) | |

The United States of America, through its attorney, United States Attorney John W. Suthers, District of Colorado, hereby submits the following as its Complaint in this matter:

## I. INTRODUCTION

1. On October 26, 1995, the Defendant, David B. St. Germain ("St. Germain"), was convicted in the United States District Court for the District of Massachusetts on nine counts of bank fraud, conspiracy and making false statements to a bank in connection with loans that he had with MetroWest Bank, formerly known as Framingham Savings Bank.

2. The Court sentenced St. Germain to serve one year in prison, a five year term of supervised release, and ordered him to pay his victim $600,000.00 restitution on only one count of conspiracy. The Court suspended sentence on all the other counts.

3. On July 23, 1996, the sentencing court imposed a special condition of supervised release, that St. Germain "shall not apply for any new loans individually or through others without prior authorization from the United States Probation Department." Once on supervised release the Court also required St. Germain to disclose his financial situation, including filing



Exhibit 1
99-CR-408-N

monthly reports on employment and income so the probation officer can determine an appropriate restitution payment schedule.

4.   While on supervised release he violated those conditions. St. Germain concealed from the United States Probation Office his ownership interest in the following: (1) a country and western night club and the income generated from that business; (2) an office building complex and the income derived from that business; (3) income derived from a gas station/car wash business; (4) a newly constructed house; (5) a Harley-Davidson motorcycle; and (6) a late-model pickup truck. During supervised release St. Germain also concealed his business activities, including arranging for a straw to procure loans for him, lease vehicles for him, procure a cell phone for him, and the recruitment of investors for real estate and business deals.

5.   St. Germain's business activities generated tens of thousands of dollars, created hundreds of thousands of dollars in business and real estate equity. Despite generating substantial wealth during supervised release, St. Germain falsely represented to the United States Probation Office he worked at a low wage job at a packaging company. During supervised release St. Germain paid only $12,666 toward his restitution order.

6.   Defendant Randy Overley ("Overley") assisted and facilitated St. Germain's concealment scheme by (1) acting as St. Germain's straw on numerous transactions; (2) concealing St. Germain's business activities from the United States Probation Office by making it appear that St. Germain worked at his packaging business; and (3) making false statements to St. Germain's probation officer. Overley's and St. Germain's conspiracy defrauded the Court and the victim restitution payments they were entitled to. Overley's effort to assist St. Germain's scheme to conceal assets caused the United States Probation Office and United States Attorney's Office to expend thousands of dollars uncovering the conspiracy through investigation and

discovery and succeeded in diverting hundreds of thousands of dollars that should have been paid to St. Germain's victim.

11. The United States has filed this civil action: (1) to pierce the facade of false ownership meant to defraud St. Germain's victim of the restitution payments to which it is entitled; (2) to recover damages that equal the amount of monies the conspiracy diverted from payments of restitution; (3) to recover the costs and expenses St. Germain's and Overley's conspiracy caused to the United States; and (4) to insure that the criminal justice goals of restitution are achieved: deterrence and rehabilitation.

8. Count I of this Complaint, seeks, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., a declaration, inter alia, that St. Germain is the true owner, or in the alternative, the half owner of the House held in Overley's name. Count II of this Complaint, seeks, pursuant to common law fraud theory, to hold St. Germain and Overley liable for an amount equal to the unpaid portion of St. Germain's restitution order for his part in their joint scheme to defraud and deceive St. Germain's victim and the United States Probation Office. Count III of the Complaint seeks to hold Overley and St. Germain jointly and severally liable for all damages, including investigatory and legal expenses resulting from the conspiracy, pursuant to a theory of civil conspiracy for deceiving and defrauding St. Germain's victim of its restitution payments. Count IV seeks to hold Overley liable for all costs and expenses resulting from Overley's assistance and liable for all the monies the conspiracy successfully concealed during St. Germain's supervised release, pursuant to the theory of aiding and abetting. Count V seeks to hold Overley and St. Germain liable, pursuant to a theory of joint venture, for the joint efforts to purchase and build a home, and all the while concealing St. Germain's ownership interest in it.

## II. PARTIES

9. The Plaintiff, the United States of America, is a sovereign entity and body politic.

10. The Defendant, St. Germain, currently resides at a Federal Prison in Sandstone, NM, where he is serving a fifteen year sentence imposed by the Honorable Edward W. Nottingham, United States District Judge for the District of Colorado, for violating the terms of his supervised release by perpetrating the scheme set forth in this Complaint.

11. The Defendant, Overley, is an individual over the age of 18 years, and is a resident of Castlewood Canyon Road, Franktown, Colorado.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and 18 U.S.C. §§ 3613 and 3664.

13. This Court has venue under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the District of Colorado.

## FACTUAL ALLEGATIONS

- **St. Germain sought to escape paying his criminal restitution order**

14. The United States realleges and incorporates paragraphs 1 through 13 of this Complaint as if fully set forth herein.

15. Upon release from prison, St. Germain began the supervised release portion of the sentence. The United States Probation Office informed St. Germain of all the standard and special conditions of his supervised release, including the terms that forbid St. Germain from borrowing money and disclosing all employment and income information.

16. The United States Probation Office also told St. Germain he must make every effort to pay his victims restitution.

17. Once supervised release commenced, St. Germain immediately set out to conceal his business activities and income. St. Germain made it appear to the United States Probation Office that he could only manage to find a low level job at a packaging company and live modestly. The central goal of his scheme was to escape paying his criminal restitution order.

- **Overley agrees to assist and facilitate St. Germain's scheme**

18. Overley agreed to assist and facilitate St. Germain in his scheme.

19. In furtherance of this scheme, Overley agreed with St. Germain to falsely represent to the United States Probation Office that he employed St. Germain at Computer Packaging and Design.

20. On at least three occasions, Overley told St. Germain's probation officer that he employed St. Germain at Computer Packaging and Design.

21. Overley also issued false paychecks to St. Germain so St. Germain could attach copies of the paychecks to monthly supervision reports he filed with the United States Probation Office. St. Germain would deposit the paychecks into his account and then reimburse Overley for the amount of the check.

22. Overley knew that the Defendant owed $600,000.00 in restitution and was aware that maintaining St. Germain on his low paying payroll would by necessity result in a low restitution payment.

23. While Overley and St. Germain created the facade for the United States Probation Office of the honest, hard-working felon earning low wages, St. Germain was brokering major deals that involved a nightclub, office building acquisition and constructed a luxury home.

- **Overley's and St. Germain's conspiracy concealed hundreds of thousands of dollars from the United States Probation Office**

24. Overley's and St. Germain's conspiracy (the "conspiracy") concealed St. Germain's successful effort to organize a group of investors to purchase the Grizzley Rose, a Country and Western nightclub in Denver, Colorado.

25. The conspiracy concealed St. Germain's 30 percent ownership interest in the Grizzley Rose.

26. The conspiracy concealed St. Germain's sale to Overley of a partial ownership interest in the Grizzley Rose for $75,000.

27. The conspiracy concealed tens of thousands of dollars of income realized by St. Germain from the Grizzley Rose, and therefore deprived St. Germain's victim to benefit from that substantial income.

28. St. Germain acquired one-third interest in a commercial office building complex located in Denver, Colorado.

29. St. Germain also was half owner of the management company, First Cornerstone Management Inc., that managed the office complex.

30. The conspiracy concealed from the United States Probation Office St. Germain's ownership interest in the office building complex and in the management company that oversaw it.

31. Those businesses realized tens of thousands of dollars for St. Germain during supervised release.

32. The conspiracy also shielded the substantial equity in the office building, which was liquidated through a refinance during St. Germain's supervised release.

33. St. Germain also derived income from a gas station and car wash business.

34. The conspiracy concealed from the United States Probation Office the income derived from that business.

35. In or about April 1999, both Overley and St. Germain approached First Bank of Founders Parkway in Castlerock, Colorado in an effort to obtain a construction loan on the House to be built at Castlewood Canyon Road in Franktown, Colorado. St. Germain was also present at the closing on October 1, 1999.

36. Although the loan was made in Overley's name, St. Germain was the proponent for the loan and, in fact, invested in excess of $30,000.00 into the project. St. Germain also arranged for Overley to hold title to raw land where the House was to be constructed.

37. On or about January 14, 1999, St. Germain contacted Rocky Mountain Houses of Hamilton, Montana, expressing an interest in purchasing House components.

38. On or about March 18, 1999, St. Germain signed and dated a Rocky Mountain House Plan Purchase Agreement requiring the payment of $4,555.50. The payment was made by a check remitted by First Cornerstone Management, Inc., the entity in which St. Germain was also a silent partner.

39. St. Germain also met with and negotiated the construction of a House with two local builders, John Woods, d/b/a Colorado Log Builders and Shane Hand ("Hand") d/b/a Handcrafted Home Houses. Ultimately, St. Germain hired Hand to build the House.

40. St. Germain met with Hand numerous times to oversee the construction of the House.

41. Hand rarely met with Overley.

42. St. Germain described to Hand Overley's involvement in the House as that of a long-time friend who was a silent financing partner.

43. During depositions meant to inquire into the nature of St. Germain's ownership interest in certain assets held by others, Overley admitted that: (1) he knew of St. Germain's restitution order and terms of probation; (2) St. Germain would serve as the general contractor for and occupy the House; (3) St. Germain would have a fifty percent ownership interest in the House, but Overley would be the owner of record; and (4) it was St. Germain and not Overley who put the money down on the real estate.

44. In his deposition, Overley also testified that he lied to a probation officer about his financial arrangements with St. Germain in order to "help a friend."

45. Overley also agreed to be a straw titleholder for St. Germain's Harley-Davidson motorcycle, which he purchased for $20,000 during supervised release.

46. In order to conceal St. Germain's interest in a late-model pickup truck, Overley agreed to become the vehicle's leaseholder.

## COUNT I
### Declaratory Judgment
### 28 U.S.C. §§ 2201 et seq

47. The United States realleges and incorporates paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. The facts alleged in this Complaint create an actual controversy within this Court's jurisdiction.

49. While on probation, St. Germain invested in, purchased land and caused the construction of a House at Castlewood Canyon Road in Franktown, Colorado.

50. While Overley contends he is the House's owner, he at most holds only a 50% interest.

51. Overley only served as the straw through whom St. Germain acquired the land, financed the purchase and built the House.

WHEREFORE, the Unites States requests that the Court declare the following:

(1) that St. Germain is the true owner of the House at Castlewood Canyon Road in Franktown, Colorado standing in the name of Randy Overley or, in the alternative, half interest in the House;

(2) said House is to be immediately applied to satisfy St. Germain's $600,000.00 restitution order, plus interest; and

(3) any other relief justice demand.

## COUNT II
### Common Law Fraud

52. The United States realleges and incorporates paragraph 1 through 51 of this Complaint as if fully set forth herein.

53. St. Germain falsely represented on numerous financial statements and other documents filed with the United States Probation Office during his term of supervised release that he held no ownership interest in the House or any other real estate.

54. Overley falsely represented to the United States Probation Office that he, rather than St. Germain, built, paid for and controlled the House.

55. Reliance on St. Germain's and Overley's false statements to the United States Probation Office caused St. Germain's victim and the United States Probation Office to accept from St. Germain *de minimis* monthly payments toward St. Germain's restitution order and prevented prompt payment of the restitution order.

WHEREFORE, the United States requests that the Court order the following:

-9-

(1) that St. Germain and Overley are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2) that St. Germain and Overley are jointly and severally liable for the lost-time value of money that would have been recovered, but for their fraud; and

(3) any other relief justice demands.

## COUNT III
## Civil Conspiracy

56. The United States realleges and incorporates paragraph 1 through 55 of this Complaint as if fully set forth herein.

57. Overley agreed to facilitate and assist in St. Germain's scheme to conceal his interest in and to build the House in Franktown, Colorado.

58. Overley and St. Germain deceived and defrauded the United States by hindering the United States from recovering the wealth generated by St. Germain's secret business activities.

59. Their conspiracy shielded tens of thousands of dollars in assets from recovery, causing St. Germain's victim to lose thousands of dollars through the depreciation of monies concealed, and causing the United States to incur thousands of dollars in investigatory costs to unravel their joint fraud.

WHEREFORE, the United States requests that the Court order the following:

(1) that Overley and St. Germain are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2) that Overley and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering the conspiracy to defraud the United States;

(3) that Overley and St. Germain are jointly and severally liable for the lost-time value of money; and

10

(4)   any other relief that justice demands.

## COUNT IV
### Aiding and Abetting

60.   The United States realleges and incorporates paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.   Overley assisted and facilitated, and continues to assist, St. Germain's efforts to conceal his ownership interest in and control of the House in Franktown, Colorado.

62.   Overley understood his assistance allowed St. Germain to secretly build and conceal his real estate interest in said House.

63.   Overley knew that the central goal of St. Germain's efforts in this regard was to escape paying his restitution obligation.

WHEREFORE, the United States requests that the Court order the following:

(1)   that Overley and St. Germain are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2)   that Overley and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering their respective parts in aiding and abetting St. Germain's fraud;

(3)   that Overley and St. Germain are jointly and severally liable for the lost-time value of money; and

(4)   any other relief that justice demands.

## COUNT V
### Joint Venture

64.   The United States realleges and incorporates paragraph 1 through 63 of this Complaint as if fully set forth herein.

65.   Overley agreed to associate with St. Germain and assist him with the purchase and construction of the House in Franktown, Colorado.

66. Overley's efforts contributed to secrete St.Germain's assets and his interest in the House, nominally and currently held in Overley's name.

WHEREFORE, the United States requests that the Court order the following:

(1) that Overley and St. Germain are jointly and severally liable for an amount equal to the unpaid portion of St. Germain's restitution order;

(2) that Overley and St. Germain are jointly and severally liable for the investigatory costs associated with uncovering their joint venture;

(3) that Overley and St. Germain are jointly and severally liable for the lost-time value that would have been recovered but for their joint ventures; and

(4) Any other relief justice demands.

                                          Respectfully submitted,

                                          UNITED STATES OF AMERICA

                                          JOHN W. SUTHERS
                                          LISA CHRISTIAN
                                          CHRISTOPHER ALBERTO
                                          Assistant United States Attorneys
                                          1225 17th Street, Suite 700
                                          Denver, CO  80202

                                          _____
                                          UNITED STATES ATTORNEY

Dated: