## Single Close Construction Loan Agreement

This agreement is executed this **1ST** day of **OCTOBER, 1999**, by and between **Randy Overley**

(collectively referred to as "Borrower"), and **Randy Overley** ("Builder"), and **FirstBank Of Douglas County** ("Bank").

### Recitals

A. Bank offers a construction/permanent loan program which provides construction and permanent loan financing for a new residence with a single loan. Pursuant to this program, Borrower has applied to Bank for a loan in the principal amount of $ **330,000.00** (the "Loan"). The Loan is to be secured by a deed of trust encumbering the real estate upon which the residential improvements will be constructed (the "Property"). The Loan will also be secured by other collateral. The legal description of the Property is as follows:
**See Exhibit "A" as attached hereto and incorporated herein by reference**

B. Proceeds from the Loan will be used to finance the construction of residential improvements upon the Property and may also be used to pay various fees and charges imposed by Bank as well as other incidental costs and expenses relating to the construction and completion of the improvements. During the construction period, Bank will disburse funds from time to time to pay for the construction costs in accordance with the terms of this agreement.

C. Borrower has agreed to furnish Bank with copies of various documents and executed contracts which are described in this agreement and which relate to the construction of improvements on the Property.

D. Subject to the approval of these documents by Bank and the Borrower's compliance with the terms of this agreement, Bank is willing to make the Loan to Borrower.

Accordingly, the parties agree as follows:

1. **Terms and Definitions.** In addition to other terms defined in this agreement, the following words and phrases have the following meanings unless the context otherwise requires:

    1.1 "Code" shall mean the Uniform Commercial Code as currently enacted in the State of Colorado.

    1.2 "Premises" shall mean the Property, together with the improvements, fixtures, and personal property located upon the Property.

    1.3 "Construction Budget" shall mean a document (sometimes entitled "Construction Cost Estimate") itemizing all of the estimated costs of constructing the Improvements (including costs relating to the Loan as well as all "hard and soft costs") in accordance with the Plans and Specifications and describing all subcontract bids, materials and labor costs.

    1.4 "Completion Date" shall mean the applicable date specified by Bank in Section 13 of this agreement for completion of construction of the Improvements.

    1.5 "Improvements" shall mean the residential structure and all associated structures to be constructed upon the Property pursuant to this agreement.

    1.6 "Loan" shall mean the single close construction/ permanent loan to Borrower in the principal amount described above.

    1.7 "Deed of Trust" shall mean the deed of trust executed by Borrower encumbering the Property in favor of Bank as security for the Note.

    1.8 "Note" shall mean the promissory note executed by Borrower in favor of Bank in the principal amount of the Loan.

    1.9 "Security Agreement" shall mean the security agreement executed by Borrower encumbering fixtures, materials, and personal property owned or hereafter acquired by Borrower in connection with the construction of the Improvements and located or stored upon the Property.

    1.10 "Loan Documents" shall collectively mean the Note, the Deed of Trust, the Security Agreement, this agreement, and any other document executed in connection with or evidencing the Loan.

    1.11 "Plans and Specifications" shall mean those plans and specifications prepared for Borrower which describe the construction of the Improvements and which contain the stamp of a licensed engineer.

    1.12 "Security Deposit" shall mean the amount described in Section 8 of this agreement which shall be deposited by Borrower and held by Bank.

    1.13 "Construction Account" shall mean a separate deposit account maintained in the name of Borrower at Bank into which the proceeds of the Loan and Borrower's own funds will be deposited in the manner described by Section 2 of this agreement.

    1.14 "Builder" shall mean the general contractor accepted by Bank who will construct the Improvements upon the Property.

    1.15 "Builder Retainage" shall mean the retained sum held back from construction disbursements by Bank in the manner described in Section 9 of this agreement.

    1.16 "Site Plan" shall mean a sketch or other plans acceptable to Bank which depict the location of the proposed Improvements upon the Property.

2. **Amount and Terms of Loan.**

    2.1 The Note shall be in the principal amount of $ **330,000.00**. On the date of the closing of the Loan, the net proceeds from the Loan shall be deposited into the Construction Account.

    2.2 In addition to the amount of the Security Deposit which Borrower must deposit into the Construction Account as described in Section 8 of this agreement, Borrower shall contribute and deposit Borrower's own funds in the amount of $ **0.00** into the Construction Account on the date of closing of the Loan.
    All of the funds in the Construction Account shall be assigned to Bank in the manner described elsewhere in this agreement.

    2.3 The Note shall be repayable according to the payment schedule and terms described in the Note. The last payment shall be due on the date of maturity of the Note and shall include unpaid principal and accrued interest along with any other sums payable under the Note.

    2.4 At the option of Bank, any payments due under the Note as well as any escrow payments required by the Deed of Trust or any separate agreement between Bank and Borrower may be charged against the Construction Account. However, Borrower agrees to make all Note and escrow payments from separate funds of Borrower and not from any funds maintained in the Construction Account.

    2.5 The Note and Loan Documents shall be executed by each Borrower and also by any guarantor or accommodation party.

    2.6 The provisions of the Note and any riders to the Note shall be controlling with respect to the terms of repayment of the Loan.

EXHIBIT A-23

FB00087

3. Collateral.

   3.1 To secure the performance of Borrower's obligations to Bank under the Note and this agreement, Borrower will execute the Deed of Trust and the related Security Agreement and financing statements. The lien of the Deed of Trust and the Security Agreement shall have priority over all other liens and encumbrances against the Property and the Improvements as well as any associated fixtures, materials, or personal property.

   3.2 During the construction period and until the final payment has been disbursed to the Builder, Borrower absolutely and irrevocably assigns to Bank and grants to Bank a security interest in all funds which are on deposit at any time in the Construction Account. Borrower understands that Borrower's access to the funds in the Construction Account will be restricted during the construction period, and that the funds will be available only to pay construction and Loan expenses as described in this agreement until construction has been completed, a permanent certificate of occupancy has been issued, and all construction obligations and costs have been finally disbursed or paid to the satisfaction of Bank.

   3.2 At the request of Bank, Borrower shall also execute an assignment of rents with respect to the Improvements. This assignment of rents shall be in a form and content satisfactory to Bank.

   3.2 As additional security for the Loan, Borrower hereby grants to Bank a security interest in all deposit accounts maintained by Borrower at any subsidiary bank of FirstBank Holding Company of Colorado, Inc.

4. Selection and Acceptance of Builder. Borrower shall select and enter into a construction contract with a general contractor (the "Builder"). The construction contract and the Builder shall be subject to the prior acceptance and approval of Bank. Borrower understands that Bank's acceptance of Builder may be withheld in its sole discretion for a variety of reasons including, but not limited to, such factors as the Builder's experience, credit history, reputation, or financial condition. Upon Bank's acceptance of the Builder, this agreement shall also be executed by the Builder. The Builder will then become bound by all of the terms and conditions of this agreement relating to the Builder's performance and activities. By accepting the Builder, Bank is not rendering any actual or implied recommendation or endorsement of the Builder. Bank shall not assume any responsibility or liability to Borrower or any third party for the actions or conduct of the Builder in any respect.

5. Submission and Approval of Construction Documents. Borrower shall promptly submit copies of the following documents for Bank's review and approval:

   5.1 A fixed price construction contract executed by Borrower and Builder which provides that no change orders may be initiated without the written approval of Bank.

   5.2 The Plans and Specifications.

   5.3 The Construction Budget.

   5.4 A list of all known subcontractors and materialmen. As additional subcontractors and materialmen are selected during the course of construction, their names shall be supplied to Bank.

   5.5 A site plan and an improvement location certificate for the Property. In its sole discretion, Bank may also require the Preparation and delivery of an acceptable land survey of the Property which depicts the correct boundaries of the Property, any encroachments upon the Property, any encroachments of the Property upon adjoining parcels, and any recorded or apparent rights of way and easements affecting the Property. The cost of obtaining any of these documents shall be borne by Borrower.

   5.6 If required by Bank, Borrower shall obtain at Borrower's expense and deliver to Bank an acceptable soils report for the Property prepared and certified by a licensed soils engineer.

   5.7 A commitment for the issuance of an ALTA lenders policy of title insurance covering the Property in a form and substance satisfactory to Bank.

6. Funds of Borrower. Borrower shall contribute and deposit the sum described in Section 2.2 as well as the amount of the Security Deposit described in Section 8 into the Construction Account. These funds must consist entirely of Borrower's own money and shall be utilized under the terms of this agreement for the Security Deposit as well as the initial construction and Loan expense disbursements.

7. Origination Fee. Borrower shall pay to Bank an origination fee in the sum of $ 0.00 . This fee shall be payable at the time of the closing of the Loan and may be deducted from the Construction Account or the proceeds of the loan.

8. Security Deposit. In order to assure the performance by Borrower and others under this agreement, Borrower shall deliver to Bank for deposit into the Construction Account the Security Deposit in the amount of $ 1,554.00 . The Security Deposit shall be held in the Construction Account and may not be released or disbursed without the consent of Bank. The Security Deposit shall be separately accounted for in Bank's records. The Security Deposit may be utilized in the discretion of Bank to pay for change orders, unanticipated cost overruns for the construction of the Improvements or to protect Bank from any expense or loss which may result from the failure to proceed with construction in a timely manner or from any negligence or default by Builder or Borrower with respect to this agreement or any other agreement or activity relating to the construction of the Improvements or the administration of the Loan. Any portion of the Security Deposit which is not applied by Bank for these purposes shall be returned to Borrower, but only after (a) construction of the Improvements has been completed, (b) Bank has made its final disbursement, and (c) Bank has received copies of the final affidavits from Borrower and Builder as well as a copy of the permanent certificate of occupancy for the Premises.

9. Builder Retainage.

   9.1 In order to guarantee full and satisfactory completion of construction and to assure Builder's compliance with the construction contract and this agreement, a sum in the amount of $ 0.00 will be retained by Bank as the Builder Retainage and held back from construction disbursements which would otherwise be paid to Builder. The Builder Retainage may be withdrawn from the Construction Account by Bank and placed in safekeeping. The Builder Retainage may be utilized in Bank's sole discretion to correct any deficiency in construction or materials as well as to reimburse Bank or others for any loss or expense resulting from Builder's breach of this agreement or the construction contract. Any part of the Builder Retainage which is not otherwise utilized for these purposes shall be paid to Builder or others after all of the conditions specified in Section 11.7 of this agreement have been achieved to the satisfaction of Bank and Borrower.

   9.2 Borrower and Builder acknowledge and agree that the Builder Retainage may be withdrawn from the Construction Account and held in safekeeping by Bank for the purposes described above. Borrower and Builder covenant and agree that the safekeeping and ultimate disbursement of the Builder Retainage in accordance with Section 9.1 above shall modify and become an integral part of the construction contract between Borrower and Builder, and that the provisions of Section 9.1 shall supersede any inconsistent provisions in the construction contract.

10. Private Mortgage Insurance. Bank shall have the right to impose private mortgage insurance requirements at any time during the administration of the loan.

11. Disbursement Procedures.

   11.1 The net proceeds from the Loan and the funds described in Section 2.2 shall be deposited into the Construction Account. All construction and other disbursements under the Loan shall be charged against the Construction Account and disbursed by Bank from its central loan disbursement account. The funds described in Section 2.2 shall be disbursed prior to any other funds in the Construction Account. Bank may limit the frequency of disbursements at any time. Disbursement requests must be approved and signed by Builder and Borrower and must be accompanied by invoices and other relevant documents as requested by Bank. All disbursements shall be made in accordance with the Construction Budget and with inspection reports detailing the progress of construction. Bank may retain funds in the Construction Account or in the central loan disbursement account at all times which are necessary, in the opinion of Bank or its inspectors, to complete construction of the Improvements in accordance with the Plans and Specifications and any approved change orders. Bank shall not be obligated to make any disbursement until all conditions of this agreement have been performed or occurred and Borrower and Builder have complied with all covenants and requirements of this agreement.

   11.2 No extra work or changes in the approved Plans and Specifications in any amount for any line item of the Construction Budget shall be ordered or authorized by Borrower without the written consent of Bank. If Bank should determine that there are sufficient funds remaining in the Construction Account or in the Security Deposit to pay for the extra work or change orders without risk to completion of the Improvements, Bank, in its sole discretion, may permit the additional costs to be paid from the Construction Account or the security deposit. Otherwise, Bank shall have the right to withhold any pending disbursement and cease all future disbursements. As a condition of resuming any disbursements, Bank may require Borrower to pay the cost of any extra work or changes from Borrower's own funds and not from the Construction Account or the Security Deposit. The failure of Borrower to comply with this requirement shall be an event of default under this agreement as well as under the Loan Documents.

11.3  At the time of any request for a disbursement, Borrower or a designated agent shall complete, execute and deliver to Bank a request for a disbursement on Bank's standard form or draw request. The draw request form will authorize Bank to charge the Construction Account for the amount of the requested disbursement. Each draw request must be accompanied by evidence in form and content satisfactory to Bank describing the purpose of each request. Such documentation may include copies of bills or statements for expenses. Each draw request shall also contain the certification of Borrower and Builder representing that the requested disbursement applies to labor and materials which were furnished in constructing the Improvements in accordance with the Plans and Specifications.

Each draw request shall also be accompanied by any lien waivers which Bank may require signed by such subcontractors and materialmen as requested by Bank. If requested, any draw request shall also be accompanied by a certificate signed by the Builder stating that all persons employed in construction of the Improvements up until the date of the requested disbursement have been paid in full. All invoices for materials shall accompany each disbursement request and must be approved in writing by the Builder and the Borrower.

11.4  All disbursements under a draw request will be made by Bank from its central loan disbursement account directly to the Builder and/or designated subcontractors, laborers and materialmen on Bank's standard lien waiver checks. Bank may at any time use funds in the Construction Account or the Security Deposit to pay, as and when due, any fees owing to Bank or any payments due under the Note. Bank may also use proceeds in the Construction Account or the Security Deposit to pay fees to release or discharge prior deeds of trust encumbering the Property, legal fees and disbursements which are payable by Borrower, and any other sums which may be owing from time to time by Borrower to Bank with respect to the Loan.

11.5  Without regard to the Security Deposit, if Bank at any time determines that the amount of undisbursed proceeds in the Construction Account will not be sufficient to fully pay for all costs required to complete the Improvements in accordance with the approved Plans and Specifications and for all other costs incurred be Borrower in connection with the construction of the Improvements, Bank shall have the right to make written demand on Borrower to deposit into the Construction Account funds equal to the amount of the shortage as determined by Bank.

Borrower shall then deposit the required funds into the Construction Account within 10 days after the date of Bank's written demand. No further disbursements need be made by Bank from the Construction Account until such funds are received.

11.6  Bank shall not be obligated to disburse funds from the Construction Account under the following circumstances:

11.6.1  Builder has varied or deviated construction of the Improvements from the Plans and Specifications in a manner which Bank has not approved or which Bank deems to be material.

11.6.2  A disbursement is requested in excess of the amount specified for any designated or related item described in the Construction Budget unless Bank has approved the disbursement and Borrower has deposited additional funds into the Construction Account in an amount acceptable to Bank.

11.6.3  Bank discovers or learns of defective work or materials upon the Premises, and this condition is not immediately remedied.

11.6.4  Builder fails to make required payments to subcontractors or any other third party.

11.6.5  Builder, or any subcontractor, fails to install specified materials and fixtures or fails to perform work in a workmanlike manner.

11.6.6  Materials are supplied or work is performed pursuant to a change order not approved by Bank.

11.6.7  A lien is filed or recorded against the Property without the written consent or approval of Bank.

11.6.8  If any event of default as defined in this agreement or under any of the Loan Documents has occurred and has not been cured.

11.6.9  If the Improvements have been damaged by fire or other casualty and Bank has not received insurance proceeds sufficient in the sole judgment of Bank to accomplish the restoration of the Improvements in accordance with the Plans and Specifications and to permit the completion of the Improvements on or before the completion date set out in this agreement.

11.6.10  When a disbursement is requested for stored materials which have not been delivered to the construction site or actually incorporated into the Improvements.

11.6.11  If Bank reasonably believes that withholding a disbursement in whole or in part is required under the mechanic's lien laws of the State of Colorado.

11.7  Bank will not be obligated to make its final disbursement of funds for the completion of the Improvements unless and until the following conditions are achieved:

11.7.1  The Improvements have been completed by the Completion Date in accordance with the Plans and Specifications. The completion of construction of the Improvements shall be evidenced, among other things, by a final certificate of occupancy issued by the municipal or other governmental authority having jurisdiction over the Premises. Bank shall have the right to verify to its reasonable satisfaction that construction has been completed to the extent required by Bank.

11.7.2  The mortgagee's policy of title insurance issued in favor of Bank has been updated and endorsed in a manner satisfactory to Bank.

11.7.3  Borrower has delivered to Bank any affidavits of completion required to be executed by Borrower as well as copies of the final certificate of occupancy or any other document relating to the completion of the Improvements which has been requested by Bank.

11.7.4  The final affidavit of Builder relating to payment of all subcontractors and material suppliers has been executed by Builder and delivered to Bank.

11.7.5  Borrower, in writing, has accepted the completed performance of Builder under the construction contract.

11.8  A waiver by Bank of any condition controlling a disbursement must be in writing. If Bank permits a disbursement to be made prior to fulfilling a required condition, this act shall not be construed as a waiver of such condition. Regardless of any past actions, Bank reserves the right to insist upon strict compliance with all conditions to a disbursement prior to permitting any present or future disbursement.

12. Inspection by Bank. Bank shall have the right to inspect the progress of construction upon the Premises at any time. In performing inspections, Bank may utilize its employees, representatives or independent consultants. In performing inspections, Bank is operating only to protect its interests under the Deed of Trust and this agreement, and Bank is not acting as the agent for either Borrower or Builder. Bank shall have no responsibility to assure that the Improvements are constructed in accordance with the Plans and Specifications. Bank shall not be required to perform any specific number or frequency of inspections. Bank will impose a fee in the amount of $ 50.00 for each inspection which exceeds the normal amount or frequency of inspections, and all inspection fees shall be paid promptly to Bank by Borrower. In the event such fees are not paid within a reasonable period of time, Bank shall be entitled to debit the Construction Account for the fees.

13. Completion Date. Construction of the Improvements shall be substantially completed on or before JUNE 27, 2000 . As used in this agreement, the phrases "substantial completion" or "substantially completed" shall mean completion of construction of the Improvements to the extent that the governing municipal or county authority has previously issued a temporary certificate of occupancy for the Improvements and will be issuing a final certificate of occupancy for the Improvements within a period of 30 days.

14. Construction Delay Fees. In the event construction of the Improvements is not substantially completed by the Completion Date, Borrower agrees to pay Bank additional fees in an amount equal to .25 percent of the principal amount of the Note for each successive 30-day period (or any portion thereof) after the Completion Date until the Improvements are substantially completed. In the event construction of the Improvements has not been substantially completed within three months after the Completion Date, Bank shall have the right to declare Borrower and Builder to be in default under this agreement.

15. Covenants of Builder. Builder covenants and agrees with Bank as follows:

15.1  Builder will act at all times as an independent contractor in the construction of the Improvements.

15.2  Builder will bear all liability and sole responsibility for loss or damage caused by the acts of its employees, subcontractors and agents upon the Premises.

15.3  Builder will comply with all laws and regulations affecting the construction of the Improvements and keep in effect all permits and approvals obtained from any governmental agencies having jurisdiction over Builder or the Property.

15.4  Builder shall indemnify, protect and defend Borrower and Bank from and against all loss, damage or expense due to claims or liabilities resulting from any accident or other event upon the Premises arising from construction activity.

FB00089

15.5   Builder shall carry builder's risk, ...lic liability and workmen's compensation insuran... 1 amounts adequate to fully protect Bank and Borrower during construction of the Improvements. Builder shall furnish Bank with ... ...ficates evidencing the existence of such coverage and providing that Bank shall be notified at least 30 days in advance of any policy cancellation or reduction in coverage.

15.6   Builder will repair or remedy any defects in workmanship or materials and will correct any reasonable complaints of Borrower relating to the construction of the Improvements for a period of one year following the Completion Date.

16. Unanticipated Construction or Excavation Problems. In the event Borrower or Builder encounter unanticipated construction or excavation problems of a material nature during the course of construction of the Improvements, Borrower shall immediately report the relevant facts to Bank. After investigation, Bank may require the Borrower or Builder to take such remedial steps, all at the expense of Borrower, as Bank may determine necessary in order to correct or compensate for the problem.
This may include, among other things, a requirement that Borrower deposit additional funds into the Construction Account in an amount which Bank may determine is appropriate to cover additional costs and expenses which could reasonably result from the problem.

17. Title Insurance. Borrower shall obtain and pay for an ALTA mortgagee's policy of title insurance issued in favor of Bank in an amount, form and substance satisfactory to Bank insuring the Deed of Trust as a first priority lien upon the Property subject only to such exceptions as are permitted by Bank. The policy shall also include any endorsements or disbursement protection provisions which Bank may require.

18. Construction, Casualty and Hazard Insurance. Borrower shall obtain and pay for insurance coverage for the Property and the Improvements consisting of a standard builder's risk policy and an all-risk policy of casualty and hazard insurance in such amounts and terms as Bank may require. To the extent that Bank deems the Builder's insurance coverage to be inadequate for any reason, Borrower will also be required to purchase specific coverages for liability and construction risks, including, but not limited to, such risks as theft of and damage to stored materials and fixtures which have not yet been incorporated into the Improvements. If required by Bank, Borrower shall also procure an acceptable policy of flood or avalanche insurance covering the Property and the Improvements. Borrower shall promptly deliver to Bank certificates evidencing such coverage and providing that Bank shall be given 30 days prior written notice of any proposed cancellation or reduction in coverage.

19. Collection of Insurance Proceeds. Borrower and Builder will cooperate with Bank in obtaining any insurance proceeds lawfully or equitably payable to Bank, and Borrower and Builder will reimburse Bank for any expenses (e.g., appraisals and the like) incurred in connection with obtaining such proceeds.

20. Covenants and Representations of Borrower and Builder. Borrower and Builder, individually and in unison, represent and certify to, as well as covenant and agree with, Bank as follows:

   20.1   As of the date of this agreement and other than has been disclosed to Bank in writing, no materials have been delivered and no labor has been performed with respect to the construction of the Improvements other than has been specifically disclosed to Bank in writing. In addition, none of these actions shall take place until Bank has consented to the commencement of construction and has recorded the Deed of Trust and perfected its other collateral documents. With respect to work or materials furnished prior to the date of this agreement, Borrower and Builder shall promptly furnish Bank with executed lien releases for such work and materials in a manner and form as Bank may direct.

   20.2   Bank's agents or representatives may enter upon the Property at any time in order to inspect the construction of the Improvements.

   20.3   All disbursements by Bank shall be used only for the payment of acquisition costs of the Property, fees and expenses payable to Bank, and for labor, materials, and other costs directly related to the construction of the Improvements.

   20.4   Borrower will not enter into possession of the Improvements until the full construction contract price has been paid to Builder and a full lien release has been executed by Builder and delivered to Bank.

   20.5   Only licensed contractors and subcontractors shall be permitted upon the Premises during construction of the Improvements, and all work upon the Premises shall be performed only by licensed contractors and subcontractors.

   20.6   Borrower shall pay separately from Borrower's own funds the following: (a) any excess expense of excavation or site preparation work necessary because of unusual soils or site conditions, or (b) any excess expense of foundation or structural work or materials required to satisfy applicable building codes. Bank's determination of excess expense shall be binding upon Borrower.

   20.7   Without the written consent of Bank to the contrary, the construction of the improvements shall commence within twenty working days after the recordation of the Deed of Trust. All construction shall be performed in strict compliance with applicable building codes, zoning regulations, and restrictive covenants and conditions. Construction of the Improvements shall be substantially completed on or before the Completion Date.

   20.8   No modifications or amendments to the Plans and Specifications shall be made without first obtaining the written approval of Bank and any appropriate governmental authorities.

   20.9   Subject to the permitted exceptions contained in the Deed of Trust, Borrower shall not, without the prior written consent of Bank, mortgage, assign, convey, encumber, transfer, or sell Borrower's interest in any part or all of the Property.

   20.10  Borrower and Builder will maintain accurate books, records and accounts reflecting all items of income and expense in connection with the construction of the Improvements and, upon the request of Bank, will make such books, records and accounts immediately available to Bank for inspection or independent audit.

   20.11  Borrower or Builder will advise Bank immediately, and in writing, if either of them receives any written notice from any laborer subcontractor or materialman to the effect that sums have not been paid when due for any labor or materials furnished in connection with the construction of the Improvements.

   20.12  All federal and state tax returns and reports of Borrower required by law to be filed have been duly filed or have been granted an extension for filing. All taxes, assessments, and other governmental charges against Borrower or upon Borrower's assets or income which have become due are either on extension or have been fully paid. All such taxes, assessments and other governmental charges shall continue to be paid or properly extended during the term of the Loan.

   20.13  All financial statements previously delivered to Bank by Borrower are true and correct in all respects and accurately reflect the financial condition of the Borrower as of the respective dates thereof.

   20.14  Borrower or Builder have no knowledge of any violations or notices of violations of any federal laws or municipal ordinances or regulations affecting the Property or the construction of the proposed Improvements.

   20.15  All public utility services necessary for the construction of the Improvements are available at or in close proximity to the boundaries of the Property.

21. Construction Financing Sign. Bank may erect and maintain a sign upon the construction site indicating that Bank has furnished construction financing for the completion of the Improvements. Borrower and Builder will prevent the destruction or removal of such sign without the prior written approval of Bank.

22. Brokerage Commission. Any brokerage commissions due in connection with the purchase by Borrower of the Property have been or will be paid in full by Borrower or the seller of the Property. Borrower agrees to indemnify Bank from any liability, claim or loss, including attorneys' fees arising by reason of the claim of any person for any such brokerage commissions. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such claim or loss exists.

23. Events of Default. Borrower will be in default under the Note, the Loan Documents and this agreement if:

   23.1   Any default or event of default occurs under the Note, this agreement, or any of the Loan Documents.

   23.2   Borrower or Builder breaches or fails to perform any covenant, condition, warranty or representation in this agreement or any of the Loan Documents.

   23.3   The construction of the Improvements is halted prior to the completion date for a period of 20 consecutive days for any cause not approved by Bank.

   23.4   The construction of the Improvements is abandoned or is not completed on or before the Completion Date.

   23.5   Any lien for labor, services, materials or otherwise is filed against the Property and is not removed or bonded over by a surety company acceptable to Bank within 15 days thereafter.

   23.6   Borrower or Builder fail to deposit funds or pay any fee required by this agreement or the Loan Documents as and when due.

   23.7   Any litigation or claim is filed or asserted against Borrower or Builder which, if adversely determined, could reasonably be expected to impair the ability of Borrower or Builder to perform their obligations under this agreement.

   23.8   A levy or attachment is made upon, or a receiver is appointed for, the Property or any assets of Borrower or Builder.

CNSTAG 08/98                                Page 4 of 5
FB00090

23.9    Borrower or Builder make a general assignment for the benefit of creditors or commit any act of bankruptcy, or any proceedings under any bankruptcy or insolvency law in any jurisdiction are brought by or against Borrower or Builder.

23.10    Bank reasonably determines that the financial condition of Borrower has undergone a material adverse change.

23.11    Without first having obtained the written consent of Bank, Borrower transfers, sells, conveys or assigns all or any portion of the Property in violation of the Deed of Trust or this agreement.

23.12    If the Improvements are partially or totally damaged or destroyed by fire or any other cause, and the restoration of the Improvements cannot reasonably be expected to be concluded so that the Improvements will be completed on or before the Completion Date.

24. **Remedies.** Upon occurrence of any one or more of the events of default described above, Bank shall be entitled at its option to immediately exercise any one or more of the following remedies:

    24.1    Bank may exercise any of the various remedies provided in any of the Loan Documents and the Note, including, but not limited to, accelerating the indebtedness under the Note and foreclosing the Deed of Trust. In addition, Bank may exercise any other remedies which it may have at law or in equity.

    24.2    Bank may enter into possession of the Premises and take all actions necessary in its judgment to complete construction of the Improvements in accordance with the Plans and Specifications. Bank shall have the right to make changes in the Plans and Specifications, work or materials as Bank may deem appropriate. Bank shall also have the right to enter into, modify or terminate any contractual arrangements concerning the Improvements, subject to Bank's right at any time to discontinue work upon the Improvements without liability. Bank shall not assume liability to Borrower or any other person or entity for completing the Improvements or for the manner or quality of construction of the Improvements. Borrower irrevocably appoints Bank as Borrower's attorney in fact, with full power of substitution, to complete the Improvements at the option of Bank and in the name of Borrower. Bank shall have the right to disburse any portion of the funds in the Construction Account as well as Bank's own funds to the extent Bank deems necessary or desirable to complete construction of the Improvements or to protect and secure the Property. All sums disbursed by Bank in completing construction of the Improvements or protecting and securing the Property will be considered to have been disbursed under the direction and for the benefit of the Borrower. In the event Bank utilizes any of its own funds for these purposes, such amounts shall be considered an additional advance under the Loan and shall be added to the principal amount of the loan. These additional advances shall be secured by the Deed of Trust and any other instruments securing the Loan and shall bear interest at the rate provided in the Note.

25. **Assignment of Contracts to Bank.** Borrower assigns to Bank all of Borrower's interest in and to the Plans and Specifications along with all drawings and reports prepared by or for Borrower as well as all construction and architectural contracts relating to the Plans and Specifications or the construction of the Improvements. Bank shall have no obligations under such contracts unless it otherwise agrees in writing. Bank shall have the right to take over and use at any time the labor, materials, supplies and equipment contracted for, by, or on behalf of Borrower, including such equipment and supplies that have previously been delivered to the Property or stored in any facility for incorporation into the improvements, all in the sole and absolute discretion of Bank.

26. **Miscellaneous.**

    26.1    Any waiver by Bank must be in writing and will not be construed as a continuing waiver. No waiver will be implied by any advance from the Construction Account or the delay or failure of Bank to take action as a result of any default by Borrower. The consent by Bank to any act or omission of Borrower will not be construed as a consent to any further or subsequent act or omission or waive the requirement for strict compliance by Borrower with all terms and provisions of this agreement and the Loan Documents in the future.

    26.2    Borrower may not assign this agreement or any of the Loan Documents or any of Borrower's rights under these instruments without the prior written consent of Bank.

    26.3    We will not impose fees or interest under the Loan which would result in a violation of any law or regulation governing maximum interest rates. In the event any applicable maximum rate is exceeded for any reason, a proportional amount will be refunded to you as necessary in order to eliminate the violation.

    26.4    Bank will have the right, but not the obligation, to commence, appear in, and defend any action or proceeding which might affect its collateral or its rights, duties or liabilities relating to this agreement or to the Loan. Borrower will promptly pay to Bank on demand all of Bank's reasonable expenses, fees (including attorneys' fees) and disbursements incurred in these actions or proceedings.

    26.5    If any litigation is commenced or action taken by Bank to enforce any of the terms of this agreement, Bank shall have the right to recover its reasonable attorneys' fees and costs of suit from Borrower. Both Borrower and Builder consent to the jurisdiction and venue of any court located in the State of Colorado in the event legal proceedings are commenced which pertain to this agreement.

    26.6    The terms of this agreement will bind and benefit the heirs, legal representatives, successors and assigns of the parties. However, this paragraph shall not be construed to permit Borrower to assign this agreement or any funds in the Construction Account. Bank shall have the right to sell the Loan, in whole or in part, without the consent of Borrower. Bank may disclose to any participants or prospective purchasers of the Loan any information or data which Bank deems material and which relates to Borrower.

    26.7    This agreement shall survive the making and closing of the Loan, and the terms and provisions of this agreement shall continue in full force so long as any part of the Note remains outstanding and unpaid.

    26.8    This agreement integrates all prior conversations and negotiations of the parties and may not be amended except in writing executed by all parties.

    26.9    This agreement shall be governed by the laws of the State of Colorado.

    26.10    This agreement and any attached signature pages or exhibits requiring signatures may be executed in several counterparts, but all counterparts shall constitute but one and the same document.

    26.11    All notices shall be in writing and shall be deemed to have been given when presented personally, when deposited in the United States Mail (by registered or certified mail), or sent by facsimile transmission to the parties at the addresses contained below:

Executed this **1ST** day of **OCTOBER, 1999**

_____  
Borrower **Randy Overley**

_____  
Borrower

Builder **Randy Overley**

By _____  
Title _____

_____  
Borrower ,

_____  
Borrower

**FirstBank Of Douglas County**

By _____  
Title **Vice President**