UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. No. 03-cv-01041-PSF-BNB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID B. ST. GERMAIN, and
RANDY OVERLEY,

    Defendants.

---

## Declaration of Harold McCloud

---

I, Harold S. McCloud, MAI, state as follows:

1. I am a member of the Appraisal Institute, a Certified General Appraiser in Colorado (#CG01313633), and the principal of McCloud & Associates, located in Parker, Colorado. I have been engaged and endorsed as an expert witness in the above-captioned civil action. On June 14, 2005, I completed an expert report relating to the log home in Franktown, Colorado, that is the subject of this action. If called to testify, I would express the opinions set forth in my report, which is attached.

EXHIBIT A-25

2. For the convenience of the Court, I summarize my opinions in the following paragraphs.

3. I understand, and assumed for purposes of my report, that the log home located at 975 North Castlewood Canyon Drive in Franktown, Colorado, was not completed, and was essentially a log home shell. I also assume that in January 2000 the log home property was encumbered by a $330,000 loan, out of which about $225,000 had been drawn and applied toward construction of the log home. I understand that an additional $104,000 may have been expended toward construction as of January 2000.

4. It is an axiom of appraising that cost does not always equal value. That is, the cost of construction and improvements to real estate is not necessarily a measure of the market value of a constructed home. Such is the case here.

5. Notwithstanding the expenditures of monies in the log home, as of January 2000, the partially constructed log home had no equity.

6. A significant factor in my conclusion that the log home had no equity is that any buyer purchasing the partially completed log home in January 2000 would be required to bear the risk associated with completing the log home and would have correspondingly required a discount on the purchase price as compensation for undertaking that risk.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2005.

Harold S. McCloud, MAI

# REAL PROPERTY CONSULTING ASSIGNMENT SUMMARY REPORT

## A PARTIALLY COMPLETED LOG RESIDENCE LOCATED AT 975 NORTH CASTLEWOOD CANYON DRIVE FRANKTOWN, COLORADO 80116

### PREPARED FOR
RANDY OVERLEY
2731 WEST WOLFENSBERGER ROAD
SEDALIA, COLORADO 80135

### RETROSPECTIVE DATE OF VALUE
JANUARY 1, 2000

### DATE OF REPORT
JUNE 14, 2005

### PREPARED BY
MCCLOUD & ASSOCIATES
18690 EAST PLAZA DRIVE, SUITE #109
PARKER, COLORADO 80134

## MCCLOUD & ASSOCIATES
Real Estate Appraisers and Consultants
18690 E Plaza Drive, Suite 109
Parker, Colorado 80134

Harold S. McCloud, MAI

(720) 747-4710
Fax (303) 996-3088

Specializing in Special
Purpose Property & General
Property Appraisals

June 14, 2005

Randy Overley
2731 West Wolfensberger Road
Sedalia, Colorado 80135
c/c Ty Gee, Esq.
Haddon, Morgan, Mueller, Jordon, Mackey & Foreman, P.C.

Re:  Partially completed log home located at
     975 North Castlewood Canyon Drive
     Franktown, CO 80116

Gentlemen:

In accordance with your request, I have completed an analysis of the financial information provided on the above-captioned property. The purpose of this analysis was to:

1) Estimate the Retrospective Value of the Fee Simple Interest in the subject property assuming completion per plans and specifications as of January 1, 2000;

2) Estimate the market value of the Fee Simple Interest of the partially completed improvements and land in its "as is" condition as of January 1, 2000 and;

3) Determine the amount of equity, if any, in the partially completed improvements and land in its "as is" condition as of January 1, 2000.

*This is a Real Property Appraisal Consulting Assignment in a Summary Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 5-2 of the Uniform Standards of Professional Appraisal Practice (USPA). As such, it presents summary discussions of the data, reasoning and analyses that were used in the appraisal process to develop the appraisers' opinion of value. Supporting documentation concerning the data, reasoning and analyses is retained in the appraisers' file. The depth of discussion contained in this report is specific to the needs of the client and/or the intended use stated below. The appraisers are not responsible for the unauthorized use of this report.*

i

Based on my research, as of January 1, 2000, the Market Value of the Fee Simple Interest of the finished residence ranged from $430,000 to $470,000. The loan balance plus the cost to complete exceeds Market Value of the finished residence. Thus, there is no value to the equity position.

These opinions are subject to the assumptions and limiting conditions contained in the consulting report. The appraisers' compensation is not contingent upon any action or event resulting from the analyses, opinions or conclusions in, or the use of this report.

I appreciate the opportunity of providing this service for you. If you have any questions, please feel free to contact us.

Respectfully submitted,

Harold S. McCloud, MAI
Certified General Appraiser
in Colorado #CGO1313633

ii

| | |
|---|---|
| **CLIENT**: | Randy Overley<br>2731 West Wolfensberger Road<br>Sedalia, Colorado 80135 |
| **APPRAISER**: | Harold S. McCloud, MAI &<br>McCloud & Associates<br>18690 East Plaza Drive, Suite #109<br>Parker, Colorado 80134 |
| **SUBJECT**: | Partially completed log home located at<br>975 North Castlewood Canyon Drive<br>Franktown, CO 80116 |
| **LEGAL DESCRIPTION**: | Tract in the SE ¼ NE ¼ of Section 3, Township 8 South, Range 66 West lying South of North Castlewood Canyon Drive, County of Douglas, State of Colorado |

**PURPOSE OF THE APPRAISAL CONSULTING ASSIGNMENT**:

The purpose of this analysis was to determine the amount of equity, if any, in the partially completed improvements and land in its "as is" condition as of January 1, 2000.

**INTENDED USES OF CONSULTING REPORT**:

This real property appraisal consulting report is restricted to, and intended to disclose my opinions pertaining to the above-captioned property.

**RETROSPECTIVE DATE OF THE RESULTS**: January 1, 2000

**DATE OF REPORT**: June 14, 2005

1

## APPRAISAL CONSULTING ASSIGNMENT DEVELOPMENT AND REPORTING PROCESS:

In preparing this real property appraisal consulting report, the appraiser

- Did not inspect the subject property.

- Reviewed G001 - G047, R00001 – R00604, FB00001 – FB00327, a disburser's notice recorded October 8, 1999 at reception number 99086670, loan documentation, an appraisal dated August 25, 1999 and a value estimate prepared by James Power.

- Analyzed the above documents to determine the amount of equity, if any, in the partially completed improvements and land in its "as is" condition as of January 1, 2000.

- I have also consulted with Corcon Corporation and WOE Builders Inc., who have constructed properties in the Franktown and Parker area.

The subject property was a partially completed log home structure, reportedly a shell, as of January 1, 2000.

This is a Complete Appraisal Consulting Assignment in a summary format, which contains a brief recapitulation of the appraisers' data, analyses, and conclusions. Supporting documentation is retained in the appraisers' file. The use of this report is restricted to the parties involved in Civil Action No. 03F1041 (U.S. District Court, Colorado) only. The appraiser is not responsible for the unauthorized use of this consulting report.

2

**DESCRIPTION OF REAL ESTATE APPRAISED**:

**Location Description:** The subject property is located west of Franktown, on south of U.S. 86, west of State Highway 83 and north of Castlewood Canyon State Park in unincorporated Douglas County.

**Primary Land Uses:** The immediate neighborhood is rural residential home sites and agricultural land.

**Summary**

The subject area is characterized as a rural residential neighborhood with minimal services. Franktown and the City of Castle Rock contain convenient retail and service businesses. The area is characterized as being in a stable phase of economic life with no signs of unchecked physical deterioration among the homes in the area that would signal the initial phases of decline.

3

**Property Description**

**Owner of Record:** Randy Overley

**Land Area:** 12.12 acres or, 527,947 square feet (Assessor's Records)

**Utilities** Electrical available to the site

**Zoning:** A-1, Douglas County

**Topography:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

**Floodplain:** According to the National Flood Insurance Map, Community Panel the subject is not located within a floodway.

**Access:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

**Easements & Restrictions:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

**Soil Conditions:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

**Environmental Issues:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

**Improvements Description:** Rocky Mountain Valuation Specialists, LLC residential appraisal report.

4

## REAL PROPERTY APPRAISAL CONSULTING ASSIGNMENT

As presented above, the purpose of this analysis was to determine the amount of equity, if any, in the partially completed improvements and land in its "as is" condition as of January 1, 2000. This analysis is discussed below.

- **Completed Property Value as of January 1, 2000** – I was provided with an appraisal of the Prospective Market Value of subject property assuming completion per plans and specifications dated August 25, 1999 prepared by Rocky Mountain Valuation Specialists, LLC. The concluded value was $470,000. I have also reviewed a retrospective value opinion prepared by James Power of JFJ Appraisal Network prepared for this assignment. Mr. Power concluded a Retrospective Market Value of $430,000. I have relied on the range within these two appraisals in concluding the amount of equity in the subject as of January 1, 2000.

- **Market Value of the partially improvements and land in its "as is" condition as of January 1, 2000** – According to the lender's documentation, the owner had been approved for a construction loan of $330,000. An additional $4,774 was placed with the bank for loan distribution by Randy Overley. As of January 10, 2000 the total amount drawn was $292,576 and the remaining balance was $42,198. The construction draw included $67,138 that represented the balance of the land loan. This results in an expenditure of $225,438 toward actual construction of the improvements. According to information provided by the client, the site excavation, foundation, flat work, log kit, log contractor, septic system and a portion of rough plumbing had been completed at the time of breach of the agreement. I have reviewed the construction/permanent loan bid for the subject, which indicated a total cost of $260,879. A number of items were not accounted for in this bid estimate including backfill, rough and finished grading, insulation, driveway material, accounting, bank fees, onsite visitations for draw approval, mobilization, permit, plans etcetc. Additionally, the initial bids are below typical market costs.

5

After adjusting for these line items, I estimate a cost of $364,297 to construct the subject. As a test of reasonableness, I have reviewed the Rocky Mountain Valuation Specialists, LLC report of August 25, 1999, which concluded $350,976 for the building and $25,000 for site improvements, which equates to $375,976. The difference in these to estimates is minimal and I have applied my cost estimate in this analysis.

Based on the information provided by Ty Gee, the subject was at a shell stage as of January 1, 2000. Typically, the building shell accounts for 40 – 50% of construction costs. Assuming a total cost to construct of $364,297 and draws totaling $225,438 for improvements only, the remaining cost to complete based on 50% would be approximately $225,438.

To arrive at the market value of the Fee Simple Interest of the partially completed improvements and land in its "as is" condition as of January 1, 2000, I conclude a cost to construct of $364,297. The residence is estimated at 50% complete or $225,438. The equity in the land is $27,862 and equates to a total of $253,300. Typically, the buyer of this property would require a 25% discount based on the remaining cost to complete or $63,325. This discount would cover the risks inherent in continuing a project with a number of unknown factors pertaining to the cost to complete. Thus, the partial value of the improvements and land in its "as-is" condition, as of January 2000 is *$189,975*.

- Based on the information provided to the appraiser the cost to construct the subject improvements total $364,279. The actual land acquisition cost was $95,000 for a total of $459,279. This indicates an imputed equity of $10,721 at time of completion assuming a $470,000. Assuming a $430,000 value, the subject was constructed with an over improvement. As of the retrospective date of value, the subject was partially completed. Assuming any discounting to a prospective buyer for risk, no equity would remain.

6

To test this conclusion, I have considered that $292,576 represents the outstanding construction loan balance or capital expenditures including land. The upper end of the value range was concluded at $470,000, indicating that the breakeven point for the remaining capital expenditures that can not exceed $177,424. The remaining construction costs were estimate at $225,438 indicating that no equity exists.

The information provided to the appraiser indicated that an additional $104,000 in capital was expended over the total construction loan balance of $292,576. This would equate to $396,576. Assuming a Market Value at the upper end of the range of $470,000 the breakeven point for the remaining capital expenditures could not exceed $73,424 or 15.6% of the Market Value of the finished residence. The remaining costs are substantially in excess of the $73,424 figure and do not reflect a market discount for risk. Therefore, I conclude that the subject contained no equity as of January 1, 2000.

## **APPRAISER'S CONCLUSION**

In the final analysis cost does not always equal value. Examples of this include swimming pools, finished basements, kitchen upgrades, excessive landscaping, and etcetc. The cost overruns experienced by the ownership does not equate to additional value, but to an under estimation of the project.

After considering all of the information provided, I conclude that as of the retrospective date of value the market value of the existing improvements does not contain any equity to the ownership.

Should additional information be provided, I reserve the right to re-examine my conclusions.

7

## *CERTIFICATE*

I certify that, to the best of our knowledge and belief, ...

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, conclusions and recommendations.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest with respect to the parties involved.

- I have no bias with respect to any property that is the subject of this report or to the parties involved in this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation and the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

- Harold S. McCloud, MAI, has not made a personal inspection of the property that is the subject of this report.

- No one except James Power, SRA, provided significant real property appraisal assistance to the person signing this certification.

- The use of this report is subject to the requirements of the Appraisal Institute and the Appraisal Foundation relating to review by their duly authorized representatives.

- As of the date of this report, Harold S. McCloud, MAI has completed the requirements of the continuing education program of the Appraisal Institute.

Harold S. McCloud, MAI
Certified General Appraiser
in Colorado #CGO1313633

9

## *Assumptions and Limiting Conditions*

This Real Property Appraisal Consulting Report is subject to the following Assumptions and Limiting Conditions:

**Legal Matters and Title**

1. No investigation of title to the subject property has been made, and it is assumed to be good and marketable, free and clear of all deeds of trust, use restrictions and reservations, easements, cases or actions pending, tax liens, and bonded indebtedness, unless otherwise specified.

2. No responsibility for legal matters is assumed.

**Limitations on the Extent of the Appraisal Process**

1. The appraiser assumes that there are no hidden or unapparent conditions of the subject property, subsoil or structures which would render it more or less valuable than otherwise comparable property. The appraiser assumes no responsibility for such conditions or for engineering, which might be required to discover such deficiencies.

2. The appraiser has made no investigation into the presence or absence of asbestos, PCBs, or other hazardous materials in the subject property. The reader should be aware that no consideration has been given to the impact, if any, on the valuation of the subject property if any of these materials should be present. The appraiser assumes no responsibility for addressing such conditions, if any, or for engineering which might be required to discover such deficiencies.

3. The author is not qualified to determine if the subject property meets the requirements of the Americans with Disabilities Act, effective January 26, 1992.

**Limitations on information contained in this Appraisal Report**

1. Care has been taken to obtain all information from reliable sources. However, the appraiser cannot guarantee or be responsible for the accuracy of this information.

2. Any sketches in this report are intended to be visual aids and should not be construed as surveys or engineering drawings.

10

**Limitations on value estimates contained in this Appraisal Report**

1. If the valuation contained herein relates to an estate that is less than the whole fee simple estate and is a fractional interest only. The value of this fractional interest, plus the value of all other fractional interests, may or may not equal the value of the entire fee simple estate considered as a whole.

2. The distribution of the total valuation in this report between land and improvements applies only under the existing program of utilization. The separate valuations for land and building must not be used in conjunction with any other report and are invalid if so used.

3. The value reported for each geographical portion relates to such portion only and should not be construed as applying with equal validity to other portions of the larger parcel or tract. The value reported for each geographical portion plus the value of all other geographical portions may or may not equal the value of the entire parcel or tract considered as a whole.

4. No consideration has been given to any furniture, trade fixtures, or special equipment. Any discussion of those items is for reference purposes only, and we accept no responsibility for the valuation of those items.

5. In the current market, real estate price levels for income-producing properties are dictated by the present value of future expectations. Under the circumstances, appraisers must quantify market projections, which are, by their character, imprecise. Property earnings and financial projections contained in this report represent our informed judgment as to present and anticipated market trends. Any cash flow analysis implemented for valuation purposes represents an orderly financial process superimposed on a market, which is typically erratic in behavior. Any aberrations and/or dramatic changes in the local and national economy may impact the subject property's capacity to generate the earnings set forth herein with a concomitant impact on value.

11

**Publication and use of this Appraisal Report**

1. Possession of this report or a copy thereof does not imply right of publication, nor use for any purpose by any other than the person or company to whom it is addressed, without the written consent of the author.

2. The report and data investigated, except that furnished by the client, remain the sole property of this firm.

3. Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations, news, sales or other media, without the written consent and approval of the author, particularly as to valuation conclusions, the identity of the author or firm with which they are connected, or any reference to the Appraisal Institute and the Appraisal Foundation, or to the MAI Designation.

4. I have no objection to your use of the firms name as the author of the report which is to be prepared, and hereby consent to your making reference to such report in your reports or financial statements and in any document filed with any governmental agency, provided that: 1) prior to making any such reference in any report or statement or any document filed with The Securities and Exchange Commission or other governmental agency, we are allowed to review and approve the text of such reference to determine the accuracy and adequacy of such reference to the report prepared by our firm; 2) in our opinion, the proposed reference is not untrue or misleading and is adequate for the purposes intended in light of the circumstances under which it is made; and, 3) such reference to the report includes language to be approved by this firm.

5. Loss or removal of any portion of this report invalidates the entire report.

**General Limitations on the Appraisal**

1. The terms of the agreement between the client and the appraiser is such that the appraiser has no obligation to update the report or revise it in any manner because of events or transactions occurring subsequent to the date of such report.

2. The appraiser shall not be required to give testimony or be in attendance in court by reason of this report unless prior arrangements have been made in writing. If any courtroom or administrative testimony is required in connection with this report, an additional fee shall be charged for those services.

3. Other Assumptions and Limiting Conditions <u>have been made where they logically apply and</u> are specified in the report.

12